Filed 7/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MIKE MALIN, | B237804 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC466547) |
| v. | |
| MARTIN D. SINGER et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary M. Strobel, Judge. Affirmed in part, reversed in part, and remanded.

Horvitz & Levy, Jeremy B. Rosen, Felix Shafir, and Wesley T. Shih for Defendants and Appellants Martin D. Singer, Lavely & Singer, and Andrew B. Brettler.

Mark Goldowitz and Paul Clifford for Defendants and Appellants Shereene Arazm and Oren Koules.

Law Offices of Barry P. King and Barry P. King for Plaintiff and Respondent.

Defendants appealed from an order denying their special motion to strike plaintiff's complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1]  The trial court denied the motion under the first step of the statutory analysis on the ground that the claims did not arise from protected speech or petitioning activities. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff Michael Malin[2] and Lonnie Moore[3] own The Dolce Group, a consortium of restaurants and nightclubs that includes the Geisha House restaurant.  Malin, Moore, and defendant Shereene Arazm are general partners of Geisha House, LLC (company).

In 2011, Arazm consulted her attorney, defendant Martin Singer, regarding Malin and Moore's alleged misappropriation of company assets.  On Arazm's behalf, Singer sent Malin a demand letter and draft of Arazm's proposed complaint.  The demand letter contained what Malin contends was an extortionate threat to disclose certain personal information if he did not pay to settle Arazm's claims.  In the disputed portion of the letter, Singer stated that Malin had misused company resources to arrange sexual liaisons with older men, including "Judge [first and last name omitted], a/k/a 'Dad' (see enclosed photo)."  (We have omitted the judge's name because the demand letter was filed under seal to protect the judge's privacy.)  In order to place the allegedly extortionate threat in its proper context, we have quoted the letter below and italicized the disputed language:

---

**1**      SLAPP is the acronym for Strategic Lawsuit Against Public Participation.  All further undesignated statutory references are to the Code of Civil Procedure.

**2**      According to Arazm's complaint, Malin's aliases include Michael Robert Carri, Michael Robert Malin, Mike Boogie, and Mike Boogie Malin.

**3**      Moore is not a party to this action.

"I am litigation counsel to Shereene Arazm. I am writing to you with respect to your outrageous, malicious, wrongful and tortious conduct. As a result of your embezzlement, conversion and breach of fiduciary duty, you have misappropriated more than a million dollars from my client. As a result thereof, my client intends to file the enclosed lawsuit against you, Lonnie Moore, and various business entities that you and Mr. Moore control. As alleged in the Complaint, you, Mr. Moore and several of your co-conspirators have been embezzling and stealing money from Ms. Arazm and Geisha House, LLC for years. As set forth in detail in the Complaint, you and Mr. Moore have devised various schemes to embezzle money from the restaurants and clubs which you own and/or manage, including, but not limited to Geisha House and WonderLand. You and Mr. Moore have created a special account or 'ledger,' which allows you to keep tabs on how the stolen funds are divided among you, Mr. Moore and your various co-conspirators. My client intends, as part of the lawsuit, to seek a full-fledged forensic accounting of the books and records for Geisha House, LLC, 2HYPE Productions, Inc., LTM Consulting, Inc., and Malin & Moore Enterprises, LLC, in addition to your personal accounts.

"In addition, as set forth in the Complaint, we have information that you and Mr. Moore have engaged in insurance scams designed to defraud not only the insurers of your establishments, but also the insurers of WonderLand. You have also taken steps to hide your assets from creditors as well as from the taxing authorities. We are aware that you have converted my client's monies and deposited them in accounts in the Cook Islands. We have also confirmed that you have planned to illegally transfer

your shares in Geisha House Los Angeles to Sylvain Bitton in a further attempt to hide from creditors and avoid tax liability.

*"Because Mr. Moore has also received a copy of the enclosed lawsuit, I have deliberately left blank spaces in portions of the Complaint dealing with your using company resources to arrange sexual liaisons with older men such as 'Uncle Jerry,' Judge [name redacted] a/k/a 'Dad' (see enclosed photo), and many others. When the Complaint is filed with the Los Angeles Superior Court, there will be no blanks in the pleading.*

"My client will file the Complaint against you and your other joint conspirators unless this matter is resolved to my client's satisfaction within five (5) business days from your receipt of this Complaint. . . ." (Italics added.)

As indicated above, Singer included with the letter a photograph of the judge and a copy of the draft complaint. The draft complaint did not identify any alleged sexual partners, but contained several blank spaces and redactions that, according to the letter, would be filled in before the complaint was filed. The draft complaint stated in relevant part: "[O]ver the past several months, _____ has arranged through email and through Internet websites such as craigslist.org to have multiple sexual encounters with [redacted] which include _____. Based on information and belief, _____ used company resources to facilitate these rendezvous and to communicate with various [redacted] including _____, _____, and _____."

After he received the demand letter, Malin sued Singer and Arazm[4] for civil extortion, violation of civil rights, and intentional and negligent infliction of emotional

---

[4]     Malin also named as defendants Arazm's husband, Oren Koules, Singer's law firm, Lavely & Singer, and Singer's associate, Andrew Brettler. The special motion to

distress. (*Malin v. Singer* (Super. Ct. L.A. County, No. BC466547).) In turn, Arazm sued Malin[5] for conversion, breach of contract, breach of fiduciary duty, accounting, and civil conspiracy.[6] (*Arazm v. Carri* (Super. Ct. L.A. County, No. BC466696).) Both actions were assigned to the same trial court as related cases.

## I.    Malin's Complaint Against Arazm and Singer

In his complaint's preliminary fact allegations, Malin alleged that at Arazm and Singer's behest, unknown individuals had retrieved his private communications and emails through illegal computer hacking and wiretapping activities. Malin's complaint alleged causes of action for: (1) civil extortion based on the demand letter (Pen. Code, §§ 519, 523) (first cause of action); (2) violation of civil rights based on the illegal

strike was made on behalf of all defendants. Where it is appropriate to do so, all references in this opinion to Arazm and Singer are to include the other defendants.

[5]    Arazm also named as defendants Moore, 2Hype Productions, Inc., LTM Consulting, Inc., Moore & Malin Enterprises, LLC, James McDonald, and Robert Pau.

[6]    We previously granted Singer's unopposed motion to take judicial notice of documents filed in Arazm's action, including her complaint and the April 10, 2012 order denying Malin's motion to strike the sexual misconduct allegations from her complaint.
    In her complaint, Arazm alleged in part that Malin had misappropriated company assets to arrange and facilitate "multiple sexual encounters." Arazm alleged that "over the past several months, Malin has arranged through email and through Internet websites such as craigslist.org to have multiple sexual encounters with various older men during which Malin would live out fetish role play fantasies, whi[le] playing out Malin's versions of a father/son and uncle/nephew relationship. Based on information and belief, Malin used company resources and assets embezzled from Plaintiffs to facilitate these rendezvous and to communicate with various sex partners, including a[n] older man he referred to as 'Uncle Jerry,' one he referred to as 'Dad,' and several others."
    In the April 10, 2012 order denying Malin's motion to strike the sexual misconduct allegations from Arazm's complaint, the trial court stated in relevant part: "The allegations regarding the embezzlement of monies is one of the main allegations of [Arazm's] conversion claim. As regards the allegations of Mr. Malin's sexual activity, Plaintiff [Arazm] alleges that Mr. Malin engaged in these activities using company money and property, tying these allegations into Mr. Malin's alleged misuse of company resources. The motion to strike these allegations is DENIED."

5

wiretapping and computer hacking activities (Pen. Code, § 502, subd. (c)(1), (2); 18 U.S.C. § 2510 et seq.) (second cause of action); and (3) intentional and negligent infliction of emotional distress (third and fourth causes of action).

## II.    Arazm and Singer's Special Motion to Strike Malin's Complaint

Arazm and Singer moved to strike Malin's complaint as a SLAPP suit arising from the exercise of Arazm's constitutionally protected rights of speech or petition. The moving parties argued that because all of Malin's causes of action were based on protected statements made in contemplation of litigation, his complaint was subject to dismissal under the anti-SLAPP statute.

Arazm and Singer contended that Malin's claims were based on their protected: (1) statements made before a judicial proceeding (§ 425.16, subd. (e)(1)); (2) statements made in connection with an issue under consideration or review in a judicial proceeding (§ 425.16, subd. (e)(2)); and (3) "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)).

Arazm and Singer denied any involvement in the computer hacking and wiretapping activities alleged in Malin's complaint. Alternatively, they argued that even if the "allegations of computer hacking and wiretapping were true (they are not), it is evident from the context of Malin's allegations that he is complaining about pre-litigation information-gathering . . . , which are clearly protected activities."

Finally, Arazm and Singer argued that Malin was incapable of establishing a probability of success on the merits under the second prong of section 425.16. They claimed that because all of their alleged activities were covered by the litigation privilege (Civ. Code, § 47, subd. (b)), it was impossible for Malin to prevail on his claims.

In opposition, Malin argued that *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*) was "effectively *identical*" to this case. Malin urged the court to apply the *Flatley* exception and deny the motion to strike the extortion claim because Singer's demand letter constituted criminal extortion as a matter of law. Malin also urged the court to

follow *Gerbosi v. Gaims*, *Weil*, *West & Epstein*, *LLP* (2011) 193 Cal.App.4th 435 (*Gerbosi*), and deny the motion to strike the claims arising from the alleged wiretapping and computer hacking activities because Arazm and Singer's liability for those alleged criminal activities was "a question of fact for the jury subject to discovery."

In reply, Singer and Arazm sought to distinguish *Flatley*. They argued "the *Flatley* exception only applies if 'either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law.' ([39 Cal.4th] at p. 320.)" The *Flatley* exception does not apply here, they argued, because they "have not conceded, and Malin has not conclusively shown, that the Letter was illegal as a matter of law."

## III.    Order of Denial

The trial court denied the anti-SLAPP motion under the first step of the section 425.16 analysis based on *Flatley* and *Gerbosi*. It concluded that because the activities targeted by Malin's complaint—wiretapping, computer hacking, and extortion—were illegal as a matter of law, the complaint was not subject to early dismissal under the anti-SLAPP statute. The court stated in relevant part:

"1.     Defendants' Special Motion to Dismiss the Complaint on file herein as an unmeritorious SLAPP lawsuit is DENIED pursuant to *Flatley v. Mauro* (2006) 39 Cal.4th 299 and *Gerbosi v. Gaims*, *Weil*, *West & Epstein* (2011) 193 Cal.App.4th 435. On the cause of action alleging wiretapping and computer hacking, under *Gerbosi v. Gaims*, allegations of this type of activity that is illegal as a matter of law are not covered by Code of Civil Procedure § 425.16. Because the other causes of action in Plaintiff's Complaint are based on the same activity alleged in [these] two causes of action, the Court similarly finds that those causes of action are not covered by § 425.16.

"2.     In so ruling, the Court makes the following findings:

"(a)     The allegations of sexual misconduct contained in the demand letter in this case are very tangential to the causes of action in Defendants' complaint, which have to do with a business dispute and alleged misuse of company resources.

7

"(b)    The letter is best read as extortion as a matter of law.  It threatens to reveal the names of sexual partners, including a retired superior court judge, and enclosed a photo of one of the alleged sexual partners.  This is well beyond a typical demand letter saying that a party is going to file a complaint if some sort of settlement or accommodation is not reached.  Rather, it accuses or imputes to the Plaintiff some disgrace or crime or threatens to expose some secret affecting him for purposes of obtaining money.  The letter states that the blanks in the draft Complaint will be filled in when the Complaint is filed.

"3.    Because the letter and the wiretapping/computer hacking activities alleged in Plaintiff's Complaint are illegal as a matter of law, there is no need to reach the second prong of the analysis under the anti-SLAPP statute.  All causes of action arise out of the extortion or wire tapping/computer hacking allegations."

Arazm and Singer timely appealed from the order denying their special motion to strike.  (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

## DISCUSSION

Section 425.16 provides an expedited procedure for dismissing lawsuits that are filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition.  (§ 425.16, subd. (a); *Digerati Holdings*, *LLC v. Young Money Entertainment*, *LLC* (2011) 194 Cal.App.4th 873, 883 (*Digerati*).)  "The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).)  The Legislature has declared that the statute must be 'construed broadly' to that end.  (*Ibid.*)"  (*Digerati*, *supra*, at p. 883.)

A special motion to strike a complaint under section 425.16 involves two steps.  First, the moving party has the initial burden of making a threshold showing that the challenged cause of action is one arising from a protected activity.  (§ 425.16, subd. (b)(1).)  In order to meet this burden, the moving party must show that the act underlying

8

the challenged cause of action fits one of the categories described in section 425.16, subdivision (e).  (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478.)  Under section 425.16, subdivision (e)(1), a protected activity includes any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

Once the moving party has made the threshold showing, the burden shifts to the opposing party.  Under step two of the statutory analysis, the opposing party must demonstrate a probability of prevailing on the claim.  (§ 425.16, subd. (b)(1).)  A cause of action is subject to dismissal under the statute only if both steps of the anti-SLAPP analysis are met.

## I.    Standard of Review

In an appeal from an order granting or denying a motion to strike under section 425.16, the standard of review is de novo.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)  In considering the pleadings and supporting and opposing declarations, we do not make credibility determinations or compare the weight of the evidence.  Instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law.  (*Ibid.*)

In the following sections, we conclude in part II that Malin's first cause of action for civil extortion is subject to dismissal under the anti-SLAPP statute.  We conclude in part III that Malin's second cause of action for violation of civil rights and third and fourth causes of action for intentional and negligent infliction of emotional distress are not subject to dismissal under the anti-SLAPP statute because they did not arise from protected activities.  Finally, we conclude in part IV that Arazm and Singer's right to costs and attorney fees as partially prevailing defendants under section 425.16 must be determined, in the first instance, by the trial court on remand.

**II.** **Malin's Extortion Claim, Which Is Based on a Demand Letter That Does Not Constitute Criminal Extortion as a Matter of Law, Is Subject to Dismissal Under the Anti-SLAPP Statute**

Malin's extortion claim is based on a demand letter that was written by an attorney on behalf of his client in anticipation of litigation. Ordinarily, a demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under section 425.16. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["'communications preparatory to or in anticipation of the bringing of an action or other official proceeding'" are protected by section 425.16] (*Briggs*).) But in *Flatley*, the Supreme Court articulated an exception for a demand letter that was so extreme that it was found to constitute criminal extortion as a matter of law. (*Flatley*, *supra*, 39 Cal.4th 299; *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799 (*Mendoza*).) We refer to the exception to the general rule stated in *Briggs*—that a demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under section 425.16—as the *Flatley* exception.

Arazm and Singer contend the trial court erroneously denied their special motion to strike the extortion claim by applying the *Flatley* exception to Singer's demand letter, which, unlike the letter in *Flatley*, does not constitute criminal extortion as a matter of law. We agree. Under the first step of the statutory analysis, we conclude that because Singer's demand letter does not constitute criminal extortion as a matter of law, the *Flatley* exception does not apply and, under the general rule articulated in *Briggs*, Singer's demand letter is a protected speech or petitioning activity under the anti-SLAPP statute. Under the second step of the statutory analysis, we conclude Singer's demand letter is protected by the litigation privilege (Civ. Code, § 47, subd. (b)), which precludes Malin from prevailing on his claim for extortion.

### A. *The Crime of Extortion Generally*

The crime of extortion is defined as "'the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . .' (Pen. Code, § 518.)

Fear, for purposes of extortion 'may be induced by a threat, either: [¶] . . . [¶] 2. To accuse the individual threatened . . . of any crime; or, [¶] 3. To expose, or impute to him . . . any deformity, disgrace or crime.' (Pen. Code, § 519.) 'Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat.' (Pen. Code, § 523.)" (*Flatley*, *supra*, 39 Cal.4th at p. 326.)

As the Supreme Court recognized in *Flatley*, extortion "has been characterized as a paradoxical crime in that it criminalizes the making of threats that, in and of themselves, may not be illegal. '[I]n many blackmail cases the threat is to do something in itself perfectly legal, but that threat nevertheless becomes illegal when coupled with a demand for money.' (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1079.)" (*Flatley*, *supra*, 39 Cal.4th at p. 326, fn. omitted.) Criminal extortion laws prohibit the wrongful use of threats to obtain the property of another, regardless whether a debt is actually owed. "'[The] belief that the victim owes a debt is not a defense to the crime of extortion.'" (*Id*. at p. 327.)

When a demand for money is accompanied by a threat to report a crime, the demand may constitute criminal extortion, even if the threat is vaguely worded. "[T]he crime with which the extortionist threatens his or her victim need not be a specific crime. 'The accusations need only be such as to put the intended victim of the extortion in fear of being accused of some crime. The more vague and general the terms of the accusation the better it would subserve the purpose of the accuser in magnifying the fears of his victim, and the better also it would serve to protect him in the event of the failure to accomplish his extortion and of a prosecution for his attempted crime.' [Citations.]" (*Flatley*, *supra*, 39 Cal.4th at p. 327.)

Attorneys are subject to "these principles in their professional conduct. Indeed, the Rules of Professional Conduct specifically prohibit attorneys from 'threaten[ing] to present criminal, administration, or disciplinary charges to obtain an advantage in a civil

11

dispute.' ([Cal.] Rules of Prof. Conduct, rule 5-100(A).)" (*Flatley, supra,* 39 Cal.4th at p. 327, fn. omitted.)


### B.    *Flatley*

In *Flatley*, an attorney, defendant D. Dean Mauro, represented a client, defendant Tyna Marie Robertson, who allegedly was raped by plaintiff Michael Flatley. Flatley, a well known "performer and dance impresario," owned stock in companies that provided live dance performances throughout the world. (*Flatley, supra,* 39 Cal.4th at p. 305.)

Mauro and Robertson made television appearances in which Robertson "described the alleged rape 'in extremely lurid detail.'" (*Flatley, supra,* 39 Cal.4th at p. 306, fn. omitted.) After sending a demand letter on Robertson's behalf, Mauro telephoned Flatley's attorney to warn that he would "'go public'" with the rape allegations, which would be "'publicized every place he [Mr. Flatley] goes for the rest of his life . . . .'" (*Id.* at p. 330.) In subsequent phone calls, Mauro continued to threaten to "'go public'" with a story that "'would follow [Flatley] wherever he or his groups performed and would "ruin" him.' In response to Fields's [Flatley's attorney] query about how much money Mauro wanted to avoid this, Mauro said 'it would take "seven figures."' He repeated that the deadline to respond was January 30." (*Ibid.*)

Flatley sued Robertson and Mauro for "civil extortion, defamation, fraud, intentional infliction of emotional distress, and wrongful interference with prospective economic advantage." (*Flatley, supra,* 39 Cal.4th at p. 306.) Mauro filed a special motion to strike Flatley's complaint under section 425.16, which was denied. The order of denial was affirmed by the Court of Appeal and the California Supreme Court.

In concluding that Mauro was not entitled to relief under the anti-SLAPP statute, the Supreme Court noted that "[e]xtortion is not a constitutionally protected form of speech. [Citations.]" (*Flatley, supra,* 39 Cal.4th at p. 328.) The court found that because Flatley's complaint was based on illegal activities, it was not subject to dismissal under the anti-SLAPP statute: "[W]here a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in

12

furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id*. at p. 320.)

In analyzing whether Mauro's demand letter fit the "extortion as a matter of law" exception, the Supreme Court stated: "At the core of Mauro's letter are threats to publicly accuse Flatley of rape and to report and publicly accuse him of other unspecified violations of various laws unless he 'settled' by paying a sum of money to Robertson of which Mauro would receive 40 percent. In his followup phone calls, Mauro named the price of his and Robertson's silence as 'seven figures' or, at a minimum, $1 million. The key passage in Mauro's letter is at page 3 where Flatley is warned that, unless he settles, 'an in-depth investigation' will be conducted into his personal assets to determine punitive damages and this information will then '**BECOME A MATTER OF PUBLIC RECORD, AS IT MUST BE FILED WITH THE COURT . . . . [¶] Any and all information, including Immigration, Social Security Issuances and Use, and IRS and various State Tax Levies and information will be exposed.** We are positive the media worldwide will enjoy what they find.' This warning is repeated in the fifth paragraph: '**[A]ll pertinent information and documentation, if in violation of any U.S. Federal[] Immigration, I.R.S., S.S. Admin., U.S. State, Local, Commonwealth U.K., or International Laws, shall immediately [be] turned over to any and all appropriate authorities**.'" (*Flatley*, *supra*, 39 Cal.4th at p. 329.)

The Supreme Court further stated that in "[e]valuating Mauro's conduct, we conclude that the letter and subsequent phone calls constitute criminal extortion as a matter of law. These communications threatened to 'accuse' Flatley of, or 'impute to him,' 'crime[s]' and 'disgrace' (Pen. Code, § 519, subds. 2, 3) unless Flatley paid Mauro a minimum of $1 million of which Mauro was to receive 40 percent. That the threats were half-couched in legalese does not disguise their essential character as extortion. [Citations.] [¶] Mauro's letter accuses Flatley of rape and also imputes to him other,

13

unspecified violations of various criminal offenses involving immigration and tax law as well as violations of the Social Security Act. With respect to these latter threats, Mauro's letter goes on to threaten that '[w]e are positive the media worldwide will enjoy what they find.' Thus, contrary to Mauro's claim that he did nothing more than suggest that, if evidence of other criminal conduct became public knowledge it would receive media attention, the letter implies that Mauro is already in possession of information regarding such criminal activity and is prepared to disclose this information to the 'worldwide' media. Whether Flatley in fact committed any violations of these various laws is irrelevant. [Citation.] Moreover, the threat to disclose criminal activity entirely unrelated to any alleged injury suffered by Mauro's client 'exceeded the limits of respondent's representation of his client' and is itself evidence of extortion. [Citation.]" (*Flatley*, *supra*, 39 Cal.4th at pp. 330-331.)

The Supreme Court concluded that Mauro's demand letter "constituted criminal extortion as a matter of law . . . based on the specific and extreme circumstances of this case." (*Flatley*, *supra*, 39 Cal.4th at p. 332, fn. 16.) In reaching this conclusion, the court explained it was not implying "that rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion. (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian*, *supra*, 218 Cal.App.3d at p. 1079 ['a person, generally speaking, has a perfect right to prosecute a lawsuit in good faith, or to provide information to the newspapers'].)" (*Flatley*, *supra*, at p. 332, fn. 16.) The court cautioned that its discussion of what constitutes "extortion as a matter of law" was "limited to the specific facts of this case." (*Id.* at p. 333, fn. 16.) It further "emphasize[d] that the question of whether the defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and the showing required to establish conduct illegal as a matter of law—either through defendant's concession or by uncontroverted and conclusive

14

evidence—is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Flatley*, *supra*, 39 Cal.4th at p. 320.)


### C.    *Mendoza*

In *Mendoza*, *supra*, 215 Cal.App.4th 799, Division One of this district applied the *Flatley* exception to a demand letter written by an attorney, Reed Hamzeh, on behalf of a client, Guy Chow, who was involved in an employment dispute with Miguel Mendoza. Hamzeh's demand letter stated that Chow's company had suffered losses in excess of $75,000 as a result of Mendoza's fraud, conversion, and breach of contract. The letter warned that if Mendoza did not reimburse the company's losses, a lawsuit would be filed and Mendoza would be reported to state and local prosecutors, the Internal Revenue Service, the Better Business Bureau, and other customers and vendors.

After receiving the demand letter, Mendoza sued Hamzeh for civil extortion, intentional infliction of emotional distress, and unfair business practices. Mendoza alleged that the threat in Hamzeh's demand letter to report him to state and local prosecutors and the Internal Revenue Service constituted criminal extortion.

Hamzeh moved to strike Mendoza's complaint under the anti-SLAPP statute. In opposition, Mendoza argued to deny the motion under the *Flatley* exception, which he claimed was controlling authority. The motion was denied.

In affirming the trial court's ruling, the appellate court stated: "The anti-SLAPP statute does not apply to the threats at issue in Hamzeh's demand letter. Hamzeh threatened to report Mendoza 'to the California Attorney General, the Los Angeles District Attorney, the Internal Revenue Service regarding tax fraud, [and] the Better Business Bureau,' and to disclose the alleged wrongdoing to Mendoza's customers and vendors if Mendoza did not pay 'damages exceeding $75,000.' Regardless of whether Mendoza committed any crime or wrongdoing or owed Chow money, Hamzeh's threat to report criminal conduct to enforcement agencies and to Mendoza's customers and vendors, *coupled with a demand for money*, constitutes 'criminal extortion as a matter of

law,' as articulated in *Flatley*. (*Flatley*, *supra*, 39 Cal.4th at p. 330.)" (*Mendoza*, *supra*, 215 Cal.App.4th at p. 806, fn. omitted.)

        *D.*       *Singer's Demand Letter Does Not Constitute Extortion as a Matter of Law*

In contrast with the demand letters in *Flatley* and *Mendoza*, Singer's demand letter did not expressly threaten to disclose Malin's alleged wrongdoings to a prosecuting agency or the public at large. Malin argues that Singer's demand letter nonetheless constituted actionable extortion because it "contained, at the very least, an *extortion demand* that threatened to not only embarrass [Malin] and force him to 'settle' with the Appellants on whatever terms they deemed 'reasonable,' but also to *expose* and *embarrass* various innocent third parties who had *no connection whatsoever* to the dispute between Ara[zm] and [Malin]. [¶] No matter how the Appellants attempt to gloss this paragraph and the other threats set forth in the July 25, 2011 letter, they clearly constituted an overt threat by the Defendants to either: '**accuse the individual threatened** . . . **of any crime; or,** . . . **[t]o expose, or impute to him** . . . **any deformity, disgrace or crime; or** . . . **[t]o expose any secret affecting him or them' for purposes of obtaining money.** (Pen. Code § 519(2), (3) and (4).) This is the very definition of criminal extortion. [Citations.]"

There are two problems with Malin's argument. First, the "secret" that would allegedly expose him and others to disgrace was inextricably tied to Arazm's pending complaint. The demand letter accused Malin of embezzling money and simply informed him that Arazm knew how he had spent those funds. There is no doubt the demand letter could have appropriately noted that the filing of the complaint would disclose Malin had spent stolen monies on a car or a villa, if that had been the case. The fact that the funds were allegedly used for a more provocative purpose does not make the threatened disclosure of that purpose during litigation extortion. We cannot conclude that the exposure of Malin's alleged activities would subject him to any more disgrace than the claim that he was an embezzler.

Second, to the extent that Malin contends the threatened disclosure of secrets affecting a third party, his alleged sexual partner, necessarily constitutes extortion, he is mistaken. Penal Code section 519, subdivision 1 defines extortion as a threat "[t]o do an unlawful injury to the person or property of the individual threatened or of a third person . . . ." The third person referred to in subdivision 1 need not have a special relationship to the individual threatened. In contrast, the remainder of Penal Code section 519 criminalizes the threats: "2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or, [¶] 3. To expose, or to impute to him or them any deformity, disgrace or crime; or, [¶] 4. To expose[] any secret affecting him or them." When read in context, it is clear that the third party referred to in Penal Code section 519, subdivisions 3 and 4 must be a relative of the individual threatened or a member of his or her family. Malin's complaint does not allege that Singer's demand letter threatened to expose a secret of a third party with whom he had a special relationship as defined by the extortion statute. Thus, the threatened disclosure of a secret affecting a third party, who is neither a relative nor family member, does not constitute extortion. (See *People v. Umana* (2006) 138 Cal.App.4th 625, 639 [only threats that fall within one of the four categories of § 519 will support a charge of extortion].)

We conclude that Singer's demand letter does not fall under the narrow exception articulated in *Flatley* for a letter so extreme in its demands that it constituted criminal extortion as a matter of law. We see a critical distinction between Singer's demand letter, which made no overt threat to report Malin to prosecuting agencies or the Internal Revenue Service, and the letters in *Flatley* and *Mendoza*, which contained those express threats and others that had no reasonable connection to the underlying dispute.

Because the demand letter in this case is readily distinguishable from the demand letters in *Flatley* and *Mendoza*, this case falls under the general rule stated in *Briggs*: "'[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil

17

Code section 47, subdivision (b) . . . [,] such statements are equally entitled to the benefits of section 425.16.'" (19 Cal.4th at p. 1115.)

Applying the general rule enunciated in *Briggs*, we conclude that Malin's extortion claim is based on a speech or petitioning activity that falls within the ambit of the anti-SLAPP statute. The special motion to strike must therefore be decided under the second step of the statutory analysis. Although the trial court did not conduct a second step analysis, we nevertheless "can address that question as it is subject to independent review. [Citation.]" (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615-616.)

### E. *The Litigation Privilege Bars Malin's Claim for Extortion*

Under the second step of the section 425.16 analysis, Malin must demonstrate a probability of prevailing on his claim for extortion. For the reasons that follow, we conclude he has failed to meet this burden because his claim for extortion is barred by the litigation privilege under Civil Code section 47, subdivision (b). (See *Digerati*, *supra*, 194 Cal.App.4th at p. 888 ["A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim."].)

#### 1. The Litigation Privilege Generally

The litigation privilege applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) "'The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' (*Action Apartment* [*Assn.*, *Inc. v. City of Santa Monica* (2007)] 41 Cal.4th [1232,] 1241.) The litigation privilege is interpreted broadly in order to further its principal purpose of affording litigants and witnesses the utmost freedom of access to the courts without fear of harassment in derivative tort actions. (*Ibid.*) The privilege is absolute and applies regardless of malice. [Fn.] (*Action*

18

*Apartment*, at p. 1241.)" (*Digerati*, *supra*, 194 Cal.App.4th at p. 889.) However, the privilege does not apply to malicious prosecution actions. (*Id.* at p. 889, fn. 8.)

"A prelitigation communication is privileged only if it 'relates to litigation that is contemplated in good faith and under serious consideration' (*Action Apartment*, *supra*, 41 Cal.4th at p. 1251) . . . . The requirement of good faith contemplation and serious consideration provides some assurance that the communication has some ""'connection or logical relation'"" to a contemplated action and is made ""'to achieve the objects'"" of the litigation. (*Ibid.*) 'Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact.' (*Ibid.*; accord, *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1487.)" (*Digerati*, *supra*, 194 Cal.App.4th at p. 889.)

2.     Analysis

Singer and Arazm contend the April 10, 2012 order in the related action, in which the same trial court denied Malin's motion to strike the sexual misconduct allegations from Arazm's complaint, demonstrates the relevance of the demand letter's sexual misconduct allegations to Arazm's conversion claim. We agree. In denying Malin's motion to strike, the trial court stated in the April 10, 2012 order that embezzlement was "one of the main allegations of [Arazm's] conversion claim. As regards the allegations of Mr. Malin's sexual activity, [Arazm] alleges that Mr. Malin engaged in these activities using company money and property, tying these allegations into Mr. Malin's alleged misuse of company resources. The motion to strike these allegations is DENIED."

Malin argues, however, that the April 10, 2012 order is "*irrelevant*, because the standards relating to a determination of issues on a demurrer and motion to strike are substantively different from that utilized in determining a § 425.16 motion to dismiss." We are not persuaded by Malin's argument. On the contrary, the April 10 order is relevant to our determination that the litigation privilege applies to Singer's demand letter, given the similarity of the sexual misconduct allegations in both the letter and subsequent complaint. Malin has cited no evidence in support of his position that the

19

demand letter's sexual misconduct allegations were not related to Arazm's proposed lawsuit or that the lawsuit was not contemplated in good faith and under serious consideration when the letter was sent.

In order for a prelitigation communication such as Singer's demand letter to be privileged under Civil Code section 47, subdivision (b), it must "relate[] to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1251.) The April 10 order demonstrates that the sexual misconduct allegations, which the court refused to strike from Arazm's complaint, were related to the demand letter that preceded the complaint.

We conclude Singer's demand letter was logically connected to litigation that was contemplated in good faith and under serious consideration when the letter was sent. The demand letter is therefore protected by the litigation privilege. Because a plaintiff cannot establish a probability of prevailing where the litigation privilege precludes liability (*Digerati*, *supra*, 194 Cal.App.4th at p. 888), the requirements for striking the extortion claim under section 425.16 have been met.

## III. The Wiretapping and Computer Hacking Allegations Are Not Subject to Dismissal Under the Anti-SLAPP Statute

The trial court refused to dismiss Malin's claims arising from illegal wiretapping activities based on *Gerbosi*, *supra*, 193 Cal.App.4th 435, which held that such claims are not subject to dismissal under the anti-SLAPP statute. We conclude the trial court's ruling was correct as to the claims for violation of civil rights and intentional and negligent infliction of emotional distress, which are based on the illegal wiretapping and computer hacking allegations.

Arazm and Singer contend the trial court erred by relying on *Gerbosi*, *supra*, 193 Cal.App.4th 435, to conclude that the alleged computer hacking and wiretapping were not protected by the anti-SLAPP statute because they constitute illegal activities. They argue that because they do not concede they engaged in such activities, "the *plaintiff* has

20

the burden to establish that the conduct was illegal as a matter of law."  As we will explain, Arazm and Singer misperceive their burden in an anti-SLAPP case.

Our Supreme Court stated in *Soukup*, *supra*, 39 Cal.4th 260, 286-287:  "[O]nce the defendant has made the required threshold showing that the challenged action arises from assertedly protected activity, the plaintiff may counter by demonstrating that the underlying action was illegal as a matter of law because either the defendant concedes the illegality of the assertedly protected activity or the illegality is conclusively established by the evidence presented in connection with the motion to strike."  Here, as in *Gerbosi*, Arazm and Singer have not demonstrated that the challenged action arises from protected activity.

In *Gerbosi*, an attorney (Gaims) allegedly hired an investigator to conduct illegal wiretapping activities and was sued by Finn for claims arising from those and other activities.  Gaims moved to strike all of the claims under the anti-SLAPP statute.  In affirming the denial of the motion as to the wiretapping claims, the court stated that Gaims's "status as a member of the bar does not automatically confer the protections of the anti-SLAPP statute as to all of Finn's claims.  To the extent Finn alleges criminal conduct, there is no protected activity as defined by the anti-SLAPP statute.  [Citation.]  As a result, Finn's first cause of action for invasion of privacy, third cause of action for eavesdropping, and fourth cause of action for violation of the [unfair competition law] (which is predicated on violations of the Pen. Code) are outside the protective umbrella of an anti-SLAPP special motion to strike procedure.  Each is based on alleged criminal activity." (*Gerbosi*, *supra*, 193 Cal.App.4th at p. 445.)

Arazm and Singer seize on *Gerbosi's* reference to "alleged criminal activity" and insist the appellate court's conclusion that mere allegations of criminal conduct are enough to apply the narrow exception to the anti-SLAPP statute established by *Flatley* is at odds with established case law.  They misconstrue the *Gerbosi* court's reasoning.

As noted, Arazm and Singer had the burden to show "the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)  "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action

21

itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "If the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step." (*Hylton v. Frank E. Rogozienski*, *Inc.* (2009) 177 Cal.App.4th 1264, 1271.)

Arazm and Singer fail to meet their threshold burden of showing that Malin's civil rights claim is based on an act that constitutes protected activity within the meaning of the statute. In an attempt to do so, they urge the gravamen of Malin's cause of action arises from acts in furtherance of their right to conduct prelitigation investigation. They are incorrect. The *acts* underlying Malin's civil rights and related emotional distress causes of action are computer hacking and wiretapping. Those acts do not fit one of the categories of protected conduct defined by the Legislature in section 425.16, subdivision (e), and Arazm and Singer do not contend otherwise. As a result, they are not entitled to relief under the anti-SLAPP statute.

The following illustration in *Gerbosi* aptly demonstrates this point: "[I]f Finn filed a personal injury complaint alleging that Gaims physically assaulted her in an attempt to dissuade her from testifying against Pfeifer in his wrongful termination lawsuit, could Gaims invoke the anti-SLAPP statute to strike the complaint by denying Finn's assault allegations? We are certain that the answer is no. The bottom line is this: section 425.16 was not enacted to protect an attorney who allegedly hired an 'investigator' like Anthony Pellicano to wiretap telephones so as to get an unfair advantage in a client's legal matters. [¶] Because Finn's causes of action alleging that Gaims engaged in wiretapping activity do not fall within the protective ambit of the anti-SLAPP statute, we need not determine whether Finn showed a probability of prevailing on those causes of action. Again, the record suggests that Gaims may well have winning defenses to Finn's causes of action alleging criminal activity, but those defenses must be

22

established by a procedural tool other than the anti-SLAPP motion procedure." (*Gerbosi*, *supra*, 193 Cal.App.4th at pp. 446-447.)

Even if we were to accept Arazm and Singer's assertion that they are innocent of the criminal computer hacking and wiretapping allegations, their claim is "more suited to the second step of an anti-SLAPP motion. A showing that a defendant did not do an alleged activity is not a showing that the alleged activity is a protected activity." (*Gerbosi*, *supra*, 193 Cal.App.4th at p. 446.) For the same reason, the contention in the reply brief that Singer's associate, defendant Brettler, is entitled to a dismissal under the anti-SLAPP statute because Malin presented no evidence showing he was engaged in any improper conduct is misplaced.

## IV.     Attorney Fees and Costs

Arazm and Singer contend that as partially prevailing defendants in an anti-SLAPP motion, they are entitled to costs and attorney fees under section 425.16, subdivision (c). As the issue of fees and costs has not been fully briefed, we remand with directions to the trial court to consider the issue in light of the following guidelines.

"The special motion to strike—or so-called anti-SLAPP motion—is subject to statutory fee shifting as follows. 'In any action subject to [the special motion to strike], a prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] [s]ection 128.5.' (Code Civ. Proc., § 425.16, subd. (c).)

"Thus, under Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees. The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (*Id.*, subd. (a).) The fee-shifting provision also encourages

23

private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement. As will appear, by its terms, Code of Civil Procedure section 425.16 permits the use of the so-called lodestar adjustment method under our long-standing precedents, beginning with *Serrano v. Priest* (1977) 20 Cal.3d 25." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 (*Ketchum*.)

In this case, because Arazm and Singer only partially prevailed on their special motion to strike under section 425.16, there are numerous factors to be considered in determining their right to fees and costs. Those factors were discussed at length in *Mann v. Quality Old Time Service*, *Inc*. (2006) 139 Cal.App.4th 328, 344-345:

"An award of attorney fees to a partially prevailing defendant under section 425.16, subdivision (c) thus involves competing public policies: (1) the public policy to discourage meritless SLAPP claims by compelling a SLAPP plaintiff to bear a defendant's litigation costs incurred to eliminate the claim from the lawsuit; and (2) the public policy to provide a plaintiff who has facially valid claims to exercise his or her constitutional petition rights by filing a complaint and litigating those claims in court. (§§ 425.16, 425.17; see *Ketchum*, *supra*, 24 Cal.4th at p. 1131.) In balancing these policies, we conclude a defendant should not be entitled to obtain *as a matter of right* his or her entire attorney fees incurred on successful and unsuccessful claims merely because the attorney work on those claims was overlapping. Instead, the court should first determine the lodestar amount for the hours expended on the successful claims, and, if the work on the successful and unsuccessful causes of action was overlapping, the court should then consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate.

"This analysis includes factors such as the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion. The fees awarded to a defendant who was only partially successful on an anti-SLAPP

24

motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way.  The court should also consider any other applicable relevant factors, such as the experience and abilities of the attorney and the novelty and difficulty of the issues, to adjust the lodestar amount as appropriate.  (See *Ketchum*, *supra*, 24 Cal.4th at p. 1132.)"

## DISPOSITION

The order denying the special motion to strike Malin's complaint is reversed in part as to the first cause of action for extortion, and affirmed in part as to the second cause of action for invasion of privacy and the third and fourth causes of action for intentional and negligent infliction of emotional distress.  The matter is remanded with directions to the superior court to grant the special motion to strike the first cause of action for extortion.  In accordance with the views expressed herein, the trial court is to determine Arazm's and Singer's rights, as partially prevailing defendants, to fees and costs incurred in the motion below.  If the trial court awards Arazm and Singer the fees and costs incurred in the motion below, their right to attorney fees incurred on appeal is to be determined by the trial court.  Costs on appeal, with the exception of attorney fees to be determined by the trial court, are to be borne by the parties.

**CERTIFIED FOR PUBLICATION**

SUZUKAWA, J.

We concur:

WILLHITE, Acting P. J.          MANELLA, J.

25