Filed 3/17/22  The Law Offices of Paul N. Philips v. Rudich CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE LAW OFFICES OF PAUL N. PHILIPS, A Professional Law Corporation, | B305942 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19SMCV00655) |
| v. | |
| DAVID P. RUDICH et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge.  Affirmed.

Law Offices of Philip Kaufler and Philip Kaufler for Defendants and Appellants.

Law Offices of Paul N. Philips, Paul N. Philips and Samantha E. Mirabello for Plaintiff and Respondent.

————————————

The Law Offices of Paul N. Philips, A Professional Law Corporation (Philips APLC) sued David P. Rudich and the Law Office of David Rudich (collectively Rudich) for declaratory relief and defamation per se.  Rudich moved to specially strike the defamation per se cause of action under Code of Civil Procedure section 425.16 (anti-SLAPP statute).[1]  The trial court denied the motion, finding Rudich failed to establish the defamation per se allegations were based on protected activity.  Rudich contends the trial court erred because his statements were subject to the litigation privilege.  We disagree and affirm.

## BACKGROUND

I.      The Underlying Litigation and Fee Dispute

In 2013, Rudich introduced a high-profile client to Philips APLC to represent the client in a music copyright infringement case.  Pursuant to a written agreement, Rudich and Philips APLC agreed to share legal fees earned from the litigation.  After Philips APLC achieved a favorable result and substantial fee award, Rudich and Philips APLC disagreed over Rudich's share of the fees.  Rudich claimed he was entitled to 50 percent of the total fee award, while Philips APLC claimed Rudich was entitled to an amount proportionate to the number of hours worked.

When Philips APLC refused to pay Rudich the disputed share of legal fees, Rudich allegedly made disparaging remarks about Philips APLC to the high-profile client involved in the litigation, and to Philips APLC's former clients and other professionals in the

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.  "SLAPP" is an acronym for strategic lawsuit against public participation.  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 & fn. 1.)

2

entertainment industry. Rudich allegedly said: (1) Philips APLC holds, takes, converts, and wrongfully retains clients' funds; (2) Philips APLC's business model includes ignoring and being purposely inattentive to clients; and (3) Philips APLC's principal was fired from his former law firm for being inattentive to clients.[2]

Philips APLC sued Rudich for declaratory relief to resolve the fee dispute and for defamation per se for the subsequent statements to the high-profile client, Philips APLC's current, former, and potential client pool, and industry professionals.

II.     Rudich's Motion to Strike

Rudich filed a special motion to strike the defamation per se cause of action under section 425.16, asserting the alleged statements were subject to the litigation privilege. In support of the motion, Rudich declared he had referred over 10 clients to Paul N. Philips (Philips) individually and each time he was told Philips would pay him 50 percent of all fees he derived from the litigation. Rudich denied telling the high-profile client or any other person that Philips APLC or Philips wrongfully retained client funds,

---

[2] At the request of Philips APLC, the first amended complaint was filed under seal in the trial court, but no request to seal was filed in this court. We note both sides recite in their trial court briefs and appellate briefs the content of the alleged defamatory statements, all of which was redacted in the publicly accessible version of the first amended complaint. We also note Philips APLC identifies the high-profile client's case information in its opening brief. Though redacted in the trial court, we would be unable to review the issues on appeal without reciting the alleged defamatory statements in our opinion. In all other respects, we have endeavored to refer only generally to redacted allegations.

ignored their clients, or that Philips was fired from a law firm for being inattentive to clients.

In opposition, Philips APLC submitted the declarations of Philips and Robert Elliott Clarke. Philips declared he learned in April 2019 Rudich had begun a smear campaign against him and his firm. He sent Rudich a cease and desist letter that garnered no response. Philips later learned Rudich continued to defame him and his law firm to the high-profile client, other former clients, and lawyers and professionals in Los Angeles, Beverly Hills, West Hollywood and entertainment communities, prompting the first amended complaint's cause of action for defamation per se.

Clarke declared Rudich introduced him to Philips in 2013 to handle a case for his late father. After losing touch with Philips, Clarke called Rudich in July or August of 2017 to inquire about his father's case. Clarke declared Rudich said he did not know about the case, but that Clarke should check with Philips because his office had been stealing money from clients for years and probably had all his father's money. Clarke then called Philips, who assured him his father's case had been handled appropriately and recovery from his case had been properly distributed.

The court denied the motion to strike, finding, Rudich did "not provide specific allegations as to how such representations relate to or are necessary to prepare for anticipated litigation. That the parties were involved in a dispute over fees does not, on its own, render any and all representation[s] made by [Rudich] about

4

[Philips APLC] protected petitioning activity.  [Rudich] fail[ed] to establish the allegations are based on protected activity."

Rudich timely appealed.[3]

**DISCUSSION**

I.    Overview

The anti-SLAPP statute provides a procedure for the early dismissal of what are commonly known as SLAPP suits—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights.  (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)  "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)  Pursuant to section 425.16, subdivision (b)(1), a litigant may move to strike a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States . . . or . . . California Constitution in connection with a public issue."

We review an order granting or denying a special motion to strike de novo.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)  In evaluating an anti-SLAPP motion, we first determine whether the moving defendant has made a threshold showing that the challenged action arises from protected activity, i.e., activity in furtherance of the rights of petition or free speech.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; § 425.16, subd. (e).)

---

[3] An order denying an anti-SLAPP motion is appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

If the defendant makes that threshold showing, the burden shifts to the plaintiff to demonstrate a probability of success on the merits. (*Oasis West Realty, LLC v. Goldman, supra*, 51 Cal.4th at pp. 819–820.)

We consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (§ 425.16, subd. (b)(2); see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) We examine the complaint in a fair and commonsense manner, and we broadly construe the anti-SLAPP statute. (See § 425.16, subd. (b)(2).) "[W]e neither 'weigh credibility [nor] compare the weight of the evidence.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

II.     The Defamation Per Se Cause of Action Does Not Arise From Protected Activity

Section 425.16, subdivision (e) identifies the categories of conduct protected under the anti-SLAPP statute that may support a motion to strike. As relevant here, the anti-SLAPP statute defines acts in furtherance of the constitutional right to petition to include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).)

Rudich contends the alleged defamatory statements are protected by the absolute litigation privilege in Civil Code section 47. Rudich seems to assume a statement subject to the litigation privilege automatically qualifies as protected activity under the anti-SLAPP statute. Rudich is mistaken.

While there is a relationship between the litigation privilege statute and the anti-SLAPP statute, they do not serve the same purposes. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323–324.) "The litigation privilege embodied in Civil Code section 47,

6

subdivision (b) serves broad goals of guaranteeing access to the judicial process, promoting the zealous representation by counsel of their clients, and reinforcing the traditional function of the trial as the engine for the determination of truth.  Applying the litigation privilege to some forms of unlawful litigation-related activity may advance those broad goals notwithstanding the 'occasional unfair result' in an individual case." (*Id.* at p. 324.)

The anti-SLAPP statute is "not concerned with securing for litigants freedom of access to the judicial process." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 324.)  Rather, the purpose of the anti-SLAPP statute is to protect the valid exercise of constitutional rights of free speech and petition from the abuse of judicial process, "by allowing a defendant to bring a motion to strike any action that arises from any activity by the defendant in furtherance of those rights." (*Ibid.*)

Nevertheless, because the two statutes are related, courts "have looked to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 322–323; *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 941, fn. 6.)

"The statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding.  The statements or writings in question must occur in connection with 'an issue under consideration or review' in the proceeding." (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866.)  "[I]t is insufficient to assert that the acts alleged were 'in connection with' an official proceeding.  There must be a connection with an issue under review in that proceeding." (*Id.* at p. 867.)  A "lawyer's attempt to inject an issue into a proceeding does not

render the issue relevant, nor can the attempted injection of an irrelevant matter transform it into an issue 'under consideration or review' in the proceeding. By definition, irrelevant matters have no tendency in reason to prove or disprove any disputed fact of consequence to the determination of a matter, and are specifically excluded from consideration. Irrelevant matters thus are not 'under consideration or review' in an official proceeding." (*Id.* at pp. 867–868, fn. omitted.)

We acknowledge communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the scope of conduct protected under section 425.16 and under Civil Code section 47, subdivision (b). (*Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at p. 1115; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) However, the "requirement to show that litigation is seriously contemplated ensures that prelitigation communications are actually connected to litigation and that their protection therefore furthers the anti-SLAPP statute's purpose of early dismissal of meritless lawsuits that arise from protected petitioning activity." (*Bel Air Internet, LLC v. Morales*, *supra*, 20 Cal.App.5th at p. 941.) Thus, under section 425.16, which protects conduct including " 'any written or oral statement or writing made *in connection with* an issue under consideration or review by a . . . judicial body,' " a statement has sufficient " 'connection' " with anticipated litigation if the person making the statement is engaged in a serious effort to encourage or counsel litigation by another. (*Id.* at p. 943.)

Rudich has not sufficiently connected the alleged defamatory statements to this litigation or to anticipated litigation. Rudich argues *without evidentiary support* the alleged defamatory statements were protected activity because they were part of a

8

preparatory investigation in anticipation of the instant fee dispute and because he made them to the client in the underlying copyright litigation. This contention is not contained in the first amended complaint or in the declarations. The gravamen of the defamation per se cause of action is that Rudich retaliated against Philips APLC by making defamatory statements to the high-profile client, former clients, and other industry professionals, that Philip APLC misappropriated client funds, and that Philips APLC and its principal were inattentive to clients. While Rudich points out the statements were alleged to have been made to the client whose fees are in dispute in the instant action, Rudich fails to address the others. Even if we were to accept Rudich's *argument absent allegations or evidence* that he contacted the former clients and industry professionals to gather probative information from potential witnesses, he has not explained how the alleged defamatory statements were relevant to the present litigation.

Rudich declared he referred several clients to Philips APLC in the past, but glaringly absent are facts describing how those former clients or industry professionals, or the subject matter of the alleged statements, were connected to this case or an issue under consideration in any other proceeding. Without more, Rudich's alleged defamatory statements appear wholly unconnected to the instant action and thus do not meet the threshold showing of protected activity under the first prong of our anti-SLAPP analysis. Even if the court considers Rudich is alleged to have contacted the high-profile client, the contact alone does not satisfy a connection to this or any anticipated litigation.

Rudich's reliance on *Malin v. Singer* (2013) 217 Cal.App.4th 1283 (*Malin*), *Cayley v. Nunn* (1987) 190 Cal.App.3d 300 (*Cayley*), and *Dickens v. Provident Life & Accident Ins. Co* (2004)

9

117 Cal.App.4th 705 (*Dickens*) is unavailing. Each of these cases involved statements directly connected to pending litigation or official proceedings.

In *Malin*, an attorney sent a demand letter and a draft complaint on behalf of his client to the plaintiff. The letter threatened to disclose salacious personal information about the plaintiff if the plaintiff did not agree to settle the claim. (*Malin*, *supra*, 217 Cal.App.4th at p. 1288.) The plaintiff sued the attorney for civil extortion and the attorney moved to strike the complaint as a SLAPP suit, arguing the statements in the demand letter and draft complaint were made in contemplation of litigation. (*Id.* at pp. 1288–1290.) The trial court denied the motion, but the appellate court reversed, finding the attorney's allegations were logically connected to a litigation that was seriously contemplated in good faith when the letter was sent. (*Id.* at pp. 1301–1302.)

Unlike in *Malin*, here Rudich has not shown how the alleged defamatory statements to former Philips APLC clients and industry professionals were related to any litigation that was being seriously contemplated by Rudich in good faith.

*Cayley* is not an anti-SLAPP case. There, defendants applied to the city council for a height variance which their neighbor plaintiffs opposed. (*Cayley*, *supra*, 190 Cal.App.3d at p. 302.) Defendants responded by circulating a petition around their neighborhood to support the variance application. (*Ibid.*) While circulating the petition, defendants told neighbors plaintiffs had illegally installed a listening device to defendants' phone lines. (*Ibid.*) Plaintiffs sued defendants for slander and defendants moved for summary judgment, arguing the statements were subject to the litigation privilege. The court found the alleged statements were made in the process of marshalling evidence for the purpose of

achieving the defendants' goal of getting the variance at the city council meeting and therefore privileged. (*Id.* at p. 304.)

In *Dickens*, *supra*, 117 Cal.App.4th at page 707, an insurer investigated its insured for fraud and reported its findings to law enforcement, which resulted in a fraud indictment. A jury acquitted the insured of all charges, and the insured sued the insurer for malicious prosecution, claiming it presented false information to law enforcement to initiate the prosecution. (*Ibid.*) The insured brought an anti-SLAPP motion to strike the malicious prosecution cause of action. (*Ibid.*) The court held the insurer's statements to law enforcement were subject to the litigation privilege, because the statements constituted reports about a possible violation of law that were preparatory to commencing an official proceeding authorized by law. (*Id.* at p. 714.)

Neither *Cayley* nor *Dickens* supports Rudich's contention the alleged defamatory statements were subject to the litigation privilege or were protected activity under the anti-SLAPP statute. Unlike *Cayley*, there is no evidence the alleged statements were made in the process of marshalling evidence for an official proceeding. Only in his reply brief on appeal does Rudich argue his contacts with Philips APLC's former clients and other industry professionals were an attempt to reach out to potential witnesses. Even so, Rudich has not explained how the alleged defamatory statements that Philips APLC stole from clients or was inattentive to clients has any bearing on the fee dispute. Further, unlike in *Dickens*, Rudich has not shown how telling former Philips APLC clients and industry professionals Philips APLC misappropriates client funds and is inattentive to clients was in furtherance of the objects of this litigation or preparatory to commencing an official proceeding.

11

Rudich has not met his initial burden to show the alleged defamatory statements were protected activity under the anti-SLAPP statute.  As such, we do not address the second prong of whether Philips APLC's defamation per se cause of action is likely to succeed on the merits.

## DISPOSITION

The order is affirmed.  Law Offices of Paul N. Philips, A Professional Law Corporation is awarded its costs on appeal.

NOT TO BE PUBLISHED.


KNILL, J.[*]


We concur:


LAVIN, Acting P. J.


EGERTON, J.

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.