Filed 7/7/21  Dua v. Dordulian CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SOHAN DUA, | B303302 |
| Cross-complainant and Appellant, | (Los Angeles County Super. Ct. No. 19STCV09569) |
| v. | |
| SAM DORDULIAN et al., | |
| Cross-defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Patricia D. Nieto, Judge.  Affirmed.

The Law Offices of J. Grant Kennedy and J. Grant Kennedy for Cross-complainant and Appellant.

KP Law and Zareh A. Jaltorossian for Cross-defendants and Respondents Sam Dordulian and Dordulian Law Group.

Barry Law Group and Jared A. Barry for Cross-defendants and Respondents Armen G. Mitilian and Mitilian Law Group.

\* \* \* \* \* \*

Cross-complainant and appellant Sohan Dua (Dua) appeals from the judgment entered in favor of cross-defendants and respondents Sam Dordulian, the Dordulian Law Group, Armen G. Mitilian and Mitilian Law Group, APLC (collectively, respondents),[1] after the trial court granted respondents' special motions to strike, under Code of Civil Procedure section 425.16,[2] Dua's cross-complaint for civil extortion, intentional infliction of emotional distress, and abuse of process. Dua also appeals the order awarding Mitilian $19,508.60 in attorney fees. We affirm the judgment and the attorney fees award.

## BACKGROUND

### The parties

Mitilian and Dordulian are cocounsel who represent Andrea W. (plaintiff) in a civil action against Dua. Plaintiff worked as a receptionist at the Northridge Dialysis Center where Dua, a physician, treated dialysis patients.

### Plaintiff's complaint against Dua

Plaintiff commenced a civil action against Dua on March 20, 2019, asserting causes of action for sexual battery, assault, and intentional infliction of emotional distress. The summons and complaint were served on Dua by personal service.

---

[1] Sam Dordulian and the Dordulian Law Group are referred to collectively as Dordulian. Armen G. Mitilian and Mitilian Law Group, APLC, are referred to collectively as Mitilian.

[2] All further statutory references are to the Code of Civil Procedure, unless stated otherwise. Section 425.16 is sometimes referred to as the anti-SLAPP statute. SLAPP is an acronym for strategic lawsuit against public participation.

2

Plaintiff alleges in her complaint that in June 2016, she and Dua attended a medical conference in Dallas, Texas, where conference attendees stayed at the same hotel.  Plaintiff intended to take a bus to Corpus Christi one night to visit relatives; however, she missed her bus.  Dua told plaintiff he was arranging a flight to Corpus Christi for her and asked her to come to his hotel room.  Dua assaulted plaintiff after she entered his hotel room.  Ignoring plaintiff's protests, Dua held plaintiff down on the bed, climbed on top her, and attempted to rape her.  Plaintiff was able to free herself when her cell phone rang, momentarily distracting Dua.

Dua filed his answer to plaintiff's complaint on April 26, 2019.  In his answer, Dua characterized plaintiff's claims as "a moment of mistaken romance" and accused respondents of distorting the facts in order to extort compensation from him.

**Dua's cross-complaint against respondents**

Dua also filed a cross-complaint against respondents, asserting causes of action for civil extortion, abuse of process, and intentional infliction of emotional distress.  The extortion cause of action is based on two prelitigation communications by respondents.

### *May 2018 demand letter*

The first communication is a demand letter Dordulian sent to Dua on behalf of plaintiff in May 2018.  The letter sets forth the history of plaintiff's claims against Dua, including the June 2016 incident in Texas and Dua's alleged continued harassment of plaintiff thereafter.  The letter accuses Dua of sexual predation based on multiple incidents of alleged sexual assault.  It states in relevant part:

> "You are a sexual predator, of which you are well aware.  There is ample evidence to establish that

you are liable for attempted rape, sexual harassment, assault and battery, false imprisonment, and a host of other causes of action in violation of applicable Federal Law and State Law. Your attack on [plaintiff] was not an isolated incident. Your predatory and callous behavior continued when you assaulted another National Renal Care employee, [Ms. G.], in February 2017. We are certain other victims you preyed on will contact us as soon as the claims of [plaintiff] and Ms. [G.] are made public with the commencement of litigation.

"A simple review of recent jury verdicts reflects awards of several hundreds of thousands to millions of dollars for conduct similar to your sexual assault and related conduct.

"[Plaintiff] is prepared to initiate litigation against you. In the interest of avoiding litigation, however, [plaintiff] is willing to settle all her claims against you for a payment of $2,500,000, and proof of enrollment for one year in a sexual harassment/assault program, along with proof of completion of the same, to help reduce the risk of you harming others. If [plaintiff] is forced to initiate litigation thereby drawing attention to you because a settlement is not reached, her claim for damages will be substantially greater.

"Our demand remains open until 5pm on May 11, 2018. If we do not receive a response by May 11, 2018, we will presume you are not interested in resolving this matter, and we will take steps to preserve and enforce [plaintiff's] rights and remedies."

The second communication underyling Dua's civil extortion claim is a December 21, 2018 e-mail from Dordulian to J. Grant

4

Kennedy, Dua's then newly retained attorney, who replaced Dua's previous counsel. Dordulian sent the December 21, 2018 e-mail in response to a December 20, 2018 e-mail from Kennedy. Kennedy's December 20, 2018 e-mail stated that he was cancelling a previously scheduled mediation because plaintiff's settlement demand was "unrealistic." He described plaintiff's case as a "shakedown" and a "fender bender at best."

Dordulian's December 21, 2018 e-mail in response states in relevant part:

> ". . . I take great offense at the notion of you calling your client's conduct a 'fender bender at best.' I truly hope that it is only as a result of you not being told the actual facts from Dr. Dua. If you have been told the real facts and still believe that conduct amounts to a 'fender bender,' then I suspect we will likely only resolve our disputes in trial. That characterization is not only insulting, but deeply wounding to my client. Contrary to the clear impression that you have of Armen and I, I was a deputy district attorney that spent 6 years in the sex crimes division of the LA County District Attorney's office. I can assure you the conduct of your client the night of June 2016 amounts to attempted rape in the State of California and I would have easily charged the same . . . .

> "Although my client has been resisting the idea of proceeding with criminal charges in Texas, I can assure [you] that the approach you['re] taking will surely make it easier for me to convince her to do so. Calling his conduct a fender bender and characterizing our lawsuit as a shakedown is exactly the type of insensitive and combative approach that will inflame my client and help me convince her that filing criminal charges is the right thing to do. His

5

actions that night were repulsive and inexcusable and not some little misunderstanding. Once again I only hope your commentary is solely as a result of you not learning all the facts. What we have outlined in the demand letter is something we will be able to prove and I can assure you my client's credibility will surely trump that of Dr. Dua. You clearly have never met my client and certainly have yet to learn the true character of your client. The only thing you are right about the Me Too movement society and our jurors will no longer tolerate the same 'it's just a little misunderstanding' or 'fender bender' excuses you attempt to provide and I welcome the verdict we will obtain against your client if that continues to be your approach."

Mitilian was copied on the December 20 and December 21, 2018 e-mails exchanged between Kennedy and Dordulian.

The May 2018 demand letter and Dordulian's December 21, 2018 e-mail, together with personal service on Dua of plaintiff's summons and complaint, are the bases for Dua's cross-claim for intentional infliction of emotional distress. Dua alleges that in December 2018, his attorney, Kennedy, advised respondents that Kennedy would accept service of any summons and complaint and that he would consider any attempt to serve Dua personally an abuse of process. The cross-claim for abuse of process is based solely on personal service of the summons and complaint on Dua.

**Anti-SLAPP motions**

Dordulian and Mitilian filed separate motions to strike Dua's cross-complaint under section 425.16, arguing that the cross-claims arose from protected speech or petitioning activity and that Dua could not establish a probability of prevailing on his claims. Mitilian further argued that Dua failed to present any evidence that Dordulian's allegedly extortionate statements could

be imputed to Mitilian. Dua's opposition to the motions was supported by his own declaration and that of his attorney, Kennedy.

The trial court granted respondents' respective anti-SLAPP motions. The trial court also granted in part Mitilian's subsequently filed motion for attorney fees and costs pursuant to section 425.16, subdivision (c)(1) and awarded Mitilian the reduced sum of $19,508.60.

This appeal followed.

## DISCUSSION

### I.    Applicable law and standard of review

Section 425.16, subdivision (b)(1) provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

Determining whether the statute bars a given cause of action requires a two-step analysis. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) First, the court must decide whether the party moving to strike a cause of action has made a threshold showing that the cause of action "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech." (§ 425.16, subd. (b)(1); accord, *Navellier*, at p. 88.) If the court finds that a defendant has made the requisite threshold showing, the burden then shifts to the plaintiff to demonstrate a "probability that the plaintiff will prevail on the

7

claim." (§ 425.16, subd. (b)(1); accord, *Navellier*, at p. 88.) In order to demonstrate a probability of prevailing, a party opposing a special motion to strike under section 425.16 """"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."""" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.)

We review de novo a trial court's order granting a special motion to strike under section 425.16. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

## II. Protected activity

Section 425.16 defines an "act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" to include statements or writings made before a judicial proceeding or made in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (b)(1).) Statements, writings and pleadings in connection with civil litigation are therefore protected by the anti-SLAPP statute. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5.)

### A. *Civil extortion cross-claim*

Dua's civil extortion cross-claim is premised on two prelitigation communications—the May 2018 demand letter and Dordulian's December 2018 e-mail to Dua's attorney. Both communications are protected speech or petitioning activity under section 425.16 and do not come within any exception to that statutory protection.

8

As a general rule, a demand letter or other communications sent in anticipation of litigation constitute legitimate speech or petitioning activity protected under the anti-SLAPP statute. (*Briggs, supra,* 19 Cal.4th at p. 1115; *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293 (*Malin*).)  Our Supreme Court has recognized a narrow exception to this general rule for a demand letter so extreme as to constitute criminal extortion as a matter of law.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 329-333 (*Flatley*).)

### 1. *Criminal extortion*

Criminal extortion is defined as "'the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . .'  (Pen. Code, § 518.)  Fear, for purposes of extortion 'may be induced by a threat, either:  [¶]  . . .  [¶]  2. To accuse the individual threatened . . . of any crime; or,  [¶]  3. To expose, or impute to him . . . any deformity, disgrace or crime[.]'  (Pen. Code, § 519.)  'Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat.'  (Pen. Code, § 523.)"  (*Flatley, supra*, 39 Cal.4th at p. 326.)  A demand for money accompanied by a threat to report a crime may constitute criminal extortion even if the threat is vaguely worded.  (*Malin, supra*, 217 Cal.App.4th at p. 1295.)

Attorneys are subject to these same principles in their professional conduct.  The Rules of Professional Conduct prohibit attorneys from threatening to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute.

9

(Cal. Rules of Prof. Conduct, rule 3.10(a); *Flatley, supra*, 39 Cal.4th at p. 327; *Malin, supra*, 217 Cal.App.4th at p. 1295.)

### 2. Flatley

In *Flatley*, at attorney named Mauro represented a client who alleged she was raped by Flatley, a well-known "performer and dance impresario." (*Flatley, supra*, 39 Cal.4th at p. 305.) After sending a demand letter on his client's behalf, Mauro telephoned Flatley's attorney and warned that he would "go public" with the rape allegations, which would be "'publicized every place [Flatley] goes for the rest of his life'" (*Id.* at p. 330.) Mauro made similar threats to "'"go public"'" in subsequent phone calls. (*Ibid.*) In response to an inquiry by Flatley's attorney about how much money Mauro wanted, Mauro responded that "'it would take "seven figures."'" (*Ibid.*) Mauro's demand letter warned Flatley that unless he settled, "'an in-depth investigation'" into his personal assets to determine punitive damages would follow, and this information would "'BECOME A MATTER OF PUBLIC RECORD, AS IT MUST BE FILED WITH THE COURT . . . . [¶] Any and all information, including Immigration, Social Security Issuances and Use, and IRS and various State Tax Levies and information will be exposed. We are positive the media worldwide will enjoy what they find.'" (*Id.* at p. 329, boldface omitted.)

The California Supreme Court concluded that Mauro's letter and subsequent phone calls constituted "extortion as a matter of law" and were not constitutionally protected speech or petitioning activities under the anti-SLAPP statute. (*Flatley, supra*, 39 Cal.4th at pp. 328, 330.) The court explained that Mauro's "communications threatened to 'accuse' Flatley of, or 'impute to him,' 'crime[s]' and 'disgrace' (Pen. Code, § 519, subds.

10

2, 3) unless Flatley paid Mauro a minimum of $1 million . . . .
[Citations.] [¶] Mauro's letter accuses Flatley of rape and also
imputes to him other, unspecified violations of various criminal
offenses involving immigration and tax law as well as violations
of the Social Security Act. With respect to these latter threats,
Mauro's letter goes on to threaten that '[w]e are positive the
media worldwide will enjoy what they find.' . . . [Citation.] [T]he
threat to disclose criminal activity entirely unrelated to any
alleged injury suffered by Mauro's client 'exceeded the limits of
respondent's representation of his client' and is itself evidence of
extortion." (*Id.* at pp. 330-331.)

### 3. Mendoza

The court in *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th
799 (*Mendoza*) applied the *Flatley* exception to a demand letter
written by an attorney, Reed Hamzeh, on behalf of a client who
was in an employment dispute with Miguel Mendoza. Hamzeh's
letter stated that Mendoza's fraud, conversion, and breach of
contract had caused his client to suffer losses in excess of
$75,000. The letter warned that unless Mendoza reimbursed
these losses, Hamzeh would file a lawsuit and report Mendoza to
state and local prosecutors, the IRS, the Better Business Bureau,
and other customers and vendors. (*Mendoza*, at p. 802.)

Mendoza sued Hamzeh for civil extortion, intentional
infliction of emotional distress, and unfair business practices, and
argued that Hamzeh's threats to report him to prosecutors and
the IRS constituted criminal extortion. Hamzeh moved to strike
Mendoza's complaint under the anti-SLAPP statute. (*Mendoza,
supra*, 215 Cal.App.4th at pp. 802-803.) In affirming the denial of
the anti-SLAPP motion, the appellate court in *Mendoza*
concluded that "Hamzeh's threat to report criminal conduct to

11

enforcement agencies and to Mendoza's customers and vendors, *coupled with a demand for money,* constitutes 'criminal extortion as a matter of law,' as articulated in *Flatley*" and was not protected speech or petitioning activity under the anti-SLAPP statute. (*Mendoza*, at p. 806.)

        **4.**    Malin

In *Malin, supra*, 217 Cal.App.4th 1283, the court held the *Flatley* exception inapplicable to a demand letter similar to the communications at issue here. In *Malin*, an attorney named Martin Singer sent a demand letter and proposed complaint on behalf of his client, Shereene Arazm, a business partner of Michael Malin and Lonnie Moore. The demand letter accused Malin and Moore of embezzlement, conversion, breach of fiduciary duty, and misappropriation of more than a million dollars. In the disputed portion of the letter, Singer accused Malin of misusing company resources "'to arrange sexual liaisons with older men such as "Uncle Jerry," Judge [name redacted], a/k/a "Dad" (see enclosed photo), and many others. When the Complaint is filed with the Los Angeles Superior Court, there will be no blanks in the pleading. [¶] My client will file the Complaint against you and your other joint conspirators unless this matter is resolved to my client's satisfaction within five (5) business days from your receipt of this Complaint.'" (*Id.* at p. 1289, italics omitted.)

Singer included with the demand letter a photograph of the judge and a copy of the draft complaint. The draft complaint did not identify any alleged sexual partners but contained blank spaces that the letter stated would be filled in when the complaint was filed.

12

After receiving the demand letter, Malin sued Singer and Arazm for civil extortion, violation of civil rights, and intentional and negligent infliction of emotional distress.  Singer and Arazm moved to strike Malin's complaint under the anti-SLAPP statute, which the trial court denied.  The Court of Appeal reversed the order denying the motion to strike the civil extortion cause of action, concluding that Singer's demand letter was a protected communication in anticipation of litigation and "d[id] not fall under the narrow exception articulated in *Flatley* for a letter so extreme in its demands that it constituted criminal extortion as a matter of law." (*Malin, supra*, 217 Cal.App.4th at p. 1299.)

The court in *Malin* explained:  "In contrast with the demand letters in *Flatley* and *Mendoza*, Singer's demand letter did not expressly threaten to disclose Malin's alleged wrongdoings to a prosecuting agency or the public at large." (*Malin, supra*, 217 Cal.App.4th at p. 1298.)  "[T]he 'secret' that would allegedly expose [Malin] and others to disgrace was inextricably tied to Arazm's pending complaint.  The demand letter accused Malin of embezzling money and simply informed him that Arazm knew how he had spent those funds.  There is no doubt the demand letter could have appropriately noted that the filing of the complaint would disclose Malin had spent stolen monies on a car or a villa, if that had been the case.  The fact that the funds were allegedly used for a more provocative purpose does not make the threatened disclosure of that purpose during litigation extortion.  We cannot conclude that the exposure of Malin's alleged activities would subject him to any more disgrace than the claim that he was an embezzler." (*Id.* at p. 1299.)

13

**5.** *Respondents' communications do not constitute criminal extortion as a matter of law and are protected under section 425.16*

Respondents met the threshold requirement of demonstrating that Dua's extortion cross-claim arises from activity protected under the anti-SLAPP statute. The bases for the extortion cross-claim—the May 2018 demand letter and Dordulian's December 2018 e-mail to Kennedy—are protected prelitigation communications or petitioning activity under section 425.16. (*Briggs, supra,* 19 Cal.4th at p. 1115.)

Respondents' demand letter, like the letter in *Malin, supra*, 217 Cal.App.4th 1283, does not constitute criminal extortion as a matter of law. The May 2018 demand letter does not threaten to report Dua to a prosecuting agency or to the public at large. Its accusations that Dua is a sexual predator and liable for attempted rape, sexual harassment, false imprisonment, assault, and battery are inextricably tied to the claims asserted in plaintiff's then pending complaint. Unlike the letter in *Flatley*, respondents' demand letter does not threaten to "go public" with the accusations unless money is paid. It simply states that plaintiff's allegations will become public upon the filing of the complaint and that other victims of Dua's sexual misconduct might then come forward. As with any demand letter, respondents' May 2018 letter sets forth the monetary sum plaintiff would be willing to accept to settle her claims in lieu of litigation. The monetary demand is not coupled with any threat to report Dua to any prosecuting agency.

Respondents' demand letter falls outside the narrow exception recognized in *Flatley* for a demand letter so extreme as to constitute criminal extortion as a matter of law. Under the

14

general rule articulated in *Briggs,* the May 2018 demand letter is protected speech or petitioning activity under section 425.16. (*Briggs, supra*, 19 Cal.4th at p. 1115; *Malin, supra*, 217 Cal.App.4th at p. 1293.)

Dordulian's December 2018 e-mail to Dua's attorney similarly does not constitute criminal extortion as a matter of law and is a protected communication under section 425.16. In the e-mail, Dordulian responds to Kennedy's dismissive characterization of plaintiff's claims as a "fender bender" and a "shakedown" by expressing the opinion, based on Dordulian's experience as a former deputy district attorney, that the 2016 Texas incident was tantamount to attempted rape. Dordulian goes on to state that Kennedy's dismissive attitude and approach could persuade plaintiff to overcome her reluctance to file criminal charges against Dua in Texas. The e-mail contains no threat to report Dua's conduct to a prosecuting agency unless a monetary sum is paid. It contains no demand for money or any other property whatsoever. The December 2018 e-mail does not constitute criminal extortion as a matter of law. It accordingly does not come within the *Flatley* exception to the general rule that communications preparatory to or in anticipation of litigation are protected under section 425.16. (*Briggs, supra*, 19 Cal.4th at p. 1115; *Malin, supra*, 217 Cal.App.4th at pp. 1298-1299.)

Dua's contention that respondents' prelitigation communications violated the Rules of Professional Conduct, which prohibit an attorney from "threaten[ing] to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute" (Cal. Rules Prof. Conduct, rule 3.10(a), does not establish that those communications constituted

15

criminal extortion as a matter of law.  Even assuming Dua could establish that respondents' conduct violated rule 3.10(a), that violation would not constitute criminal conduct within the narrow *Flatley* exception.  The exception set forth in *Flatley* is limited to criminal conduct, not violation of a civil statute or the Rules of Professional Conduct.  (See *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806 [court's use in *Flatley* "'of the phrase "illegal" was intended to mean criminal, and not merely violative of a statute'"]; *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1169 ["[c]onduct in violation of an attorney's duties of confidentiality and loyalty to a former client cannot be 'illegal as a matter of law'" for purposes of *Flatley* exception].)

We reject Dua's argument that the May 2018 demand letter and Dordulian's December 2018 e-mail, read together, constitute criminal extortion as a matter of law.  Nothing in the December 2018 e-mail indicates that it is conditioned upon Dua's acceptance of the May 2018 settlement offer, which by its terms expired on May 11, 2018.  The only reference to the May 2018 demand letter in the December 2018 e-mail is the statement that plaintiff will be able to prove the allegations outlined in the demand letter.

Neither the May 2018 demand letter nor the December 2018 e-mail, individually or considered together, constitute criminal extortion as a matter of law.  (*Malin, supra*, 217 Cal.App.4th at p. 1299.)  Both communications are therefore protected under the anti-SLAPP statute.  (*Briggs, supra*, 19 Cal.4th at p. 1115; *Malin*, at pp. 1298-1299.)

16

**B.** *Abuse of process cross-claim*

Dua's abuse of process cause of action, based solely on personal service of the summons and complaint, arises out of conduct protected by the anti-SLAPP statute. Service of process is conduct undertaken "in furtherance of the exercise of the constitutional right of petition" (§ 415.16, subd. (e)(4)) because serving the lawsuit is a necessary step to litigation. (See *Greene v. Lindsey* (1982) 456 U.S. 444, 450-451 [service of summons constitutionally required to provide notice of lawsuit to defendant].) It is therefore a protected activity under section 425.16. (Cf. *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770 ["Pleadings and process in a case are generally viewed as privileged communications."]; see *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1489 [service of notice terminating tenancy and prosecution of unlawful detainer action protected by § 415.16].)

The California Supreme Court's decision in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 (*Rusheen*) supports the conclusion that service of the summons and complaint in this action was a protected activity under section 425.16. The court in *Rusheen* addressed two issues in reviewing a judgment following an order granting an anti-SLAPP motion: "(1) whether actions taken to collect a judgment, such as obtaining a writ of execution and levying on the judgment debtor's property, are protected by the litigation privilege as communications in the course of a judicial proceeding; and (2) whether a claim for abuse of process based on the filing of an allegedly false declaration of service is barred by the litigation privilege on the ground the claim is necessarily founded on a communicative act." (*Rusheen*, at p. 1055.)

17

The court in *Rusheen* explained that because the litigation privilege set forth in Civil Code section 47, subdivision (b)[3] protects only acts that are communicative, the threshold issue in determining whether the litigation privilege applies is whether the defendant's alleged conduct is communicative or noncommunicative. (*Rusheen, supra*, 37 Cal.4th at p. 1058.) Pleadings and process, as well as filing false or perjurious testimony or declarations, are considered privileged. (*Ibid.*) The Supreme Court further explained that even if the challenged conduct was a noncommunicative physical act, a court must determine whether the gravamen of the cause of action was communicative or noncommunicative conduct. (*Id.* at p. 1061.) The court in *Rusheen* concluded that "if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct." (*Id.* at p. 1065.) "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Id.* at p. 1058.)

The court in *Rusheen* based its decision on the second prong of the anti-SLAPP analysis—the probability the party opposing

---

[3] Subject to certain exceptions not applicable here, Civil Code section 47, subdivision (b) confers an absolute privilege, barring all tort causes of action except a claim of malicious prosecution, on statements and communications made "[i]n any . . . judicial proceeding" or "in the initiation or course of any other proceeding authorized by law." (Civ. Code, § 47, subd. (b); *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 965.)

18

the motion would prevail—and did not address the first prong—whether the noncommunicative act of levying on a judgment is an act in furtherance of the right of petition or free speech. (*Rusheen, supra*, 37 Cal.4th at p. 1065.)  Although the anti-SLAPP statute and the litigation privilege are not substantively the same, courts may "look[] to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry—that is, by examining the scope of the litigation privilege to determine whether a given communication falls within the ambit of subdivision (e)(1) and (2)." (*Flatley, supra*, 39 Cal.4th at p. 323.)  Communicative acts identified in *Rusheen* as protected by the litigation privilege may accordingly constitute protected activity under the first prong of the anti-SLAPP statute.

Service of the summons and complaint on Dua was itself a protected act.  (*Rusheen, supra*, 37 Cal.4th at p. 1058; *Navellier v. Sletten, supra*, 106 Cal.App.4th at p. 770.)  Moreover, Dua's cross-complaint confirms that the gravamen of his abuse of process cross-claim is a communicative act premised on the allegations of the complaint.  The cross-complaint alleges that personal service of the summons and complaint caused Dua embarrassment, emotional distress, and "problems with his wife and family" because of "the nature of the Complaint" (i.e., the allegations contained therein).

Dua's argument that respondents ignored his attorney's agreement to accept service of process in order to further embarrass him does not alter the result.  As respondents point out, Dua had changed lawyers several times before plaintiff filed her complaint, and exercise of their statutorily authorized chosen

19

method of service avoided any potential problems with service on Dua's attorney.

Respondents met their burden of establishing that Dua's abuse of process cross-claim is premised on a communicative act protected by the litigation privilege and by section 425.16.

### C.    *Intentional infliction of emotional distress*

Dua's cross-claim for intentional infliction of emotional distress is based on the May 2018 demand letter, Dordulian's December 2018 e-mail to Kennedy, and the alleged wrongful service of process.  As discussed in parts II.A. and II.B. above, the two prelitigation communications and service of process are all protected activities under section 425.16.  Respondents accordingly made a threshold showing that Dua's cross-claim for intentional infliction of emotional distress "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech" under the first prong of the anti-SLAPP statute. (§ 425.16, subd. (b)(1); *Navellier, supra*, 29 Cal.4th at p. 88.)  We therefore turn to the second prong of the analysis required under section 425.16—whether Dua has sustained his burden of demonstrating a probability of prevailing on his cross-claims. (§ 425.16, subd. (b)(1); *Navellier*, at p. 88.)

## III.   Probability of prevailing

### A.    *Civil extortion*

The litigation privilege precludes any probability of Dua prevailing on his civil extortion claim.  The litigation privilege is absolute and precludes liability for a publication or broadcast made in or in the initiation of a judicial proceeding.  (Civ. Code, § 47, subd. (b); *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*); *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194

20

Cal.App.4th 873, 887 (*Digerati*).) "'"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' [Citation.] The litigation privilege is interpreted broadly in order to further its principal purpose of affording litigants and witnesses the utmost freedom of access to the courts without fear of harassment in derivative tort actions. [Citation.] The privilege is absolute and applies regardless of malice." (*Digerati*, at pp. 888-889.)

The May 2018 demand letter and December 2018 e-mail fall squarely within the protection accorded by the litigation privilege. Both communications were made prior to, and in connection with, an anticipated judicial proceeding. Both communications were made by plaintiff's attorneys in an effort to resolve plaintiff's claims against Dua. Given the absolute nature of the litigation privilege, Dua has not met his burden of establishing a probability of prevailing on his civil extortion claim. (*Digerati, supra*, 194 Cal.App.4th at p. 889.)

**B.    *Abuse of process***

Dua's abuse of process claim, premised solely on personal service of the summons and complaint, fails as a matter of law. "To establish a cause of action for abuse of process, a plaintiff must plead two essential elements:  that the defendant (1) entertained an ulterior motive in using the process and (2) committed a wilful act in a wrongful manner." (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792.) As to the second element,

21

"'there is no abuse of process'" if the process "'is used for its proper purpose even though the person uses it for wrongful and malicious motives.'" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 886.) "[T]here is no tort where process is used properly albeit with a bad motive." (*Abraham v. Lancaster Community Hospital* (1990) 217 Cal.App.3d 796, 826; accord, *Cantu*, at p. 886 ["merely filing or maintaining a lawsuit is not a proper basis for an abuse of process claim"].)

An improper purpose that will support an abuse of process claim "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." (*Templeton Feed & Grain v. Ralston Purina Co.* (1968) 69 Cal.2d 461, 466, italics omitted [creditor of a turkey farm abused process by having sheriff seize 35,000 turkeys belonging to a second creditor to force the second creditor to pay the farm's debts].)

"[I]ntended vexation, harassment and irritation" of a litigant and his family are not the types of coercion or collateral advantage that will support an abuse of process claim. (*Golden v. Dungan* (1971) 20 Cal.App.3d 295, 302 (*Golden*).) In *Golden*, the defendant sent a process server to the plaintiff's home at midnight. Even though the lights inside the house were off and the house was dark, and despite the fact that this was the first service attempt, the process server pounded on the door in a "loud and boisterous manner" instead of using the doorbell, awakening plaintiff, his family, and the neighborhood. (*Id.* at p. 299.) The court in *Golden* held that these facts did not state an abuse of process claim. (*Id.* at p. 302.) The court explained that "'process must be used for something more than a proper use with a bad

22

motive; that if a party uses it for the immediate use for which it was intended, he is ordinarily not liable, notwithstanding a vicious or vindictive motive; that if he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process.'" (*Ibid.*, quoting *Pimental v. Houk* (1951) 101 Cal.App.2d 884, 887.)  Personal service of the summons and complaint on Dua in this case did not constitute an abuse of process.  (*Ibid.*)

### C.     *Intentional infliction of emotional distress*

Dua's cross-claim for intentional infliction of emotional distress is based solely on the May 2018 demand letter, Dordulian's December 2018 e-mail, and personal service of the summons and complaint.  The two prelitigation communications are protected by the litigation privilege (*Action Apartment, supra*, 41 Cal.4th at p. 1241; *Digerati, supra*, 194 Cal.App.4th at p. 889), and personal service of the summons and complaint do not support an abuse of process claim in this case.  (*Golden, supra*, 20 Cal.App.3d at p. 301.)  For reasons discussed in parts III.A. and III.B. above, Dua has not established a probability of prevailing on his cross-claim for intentional infliction of emotional distress.

### D.     *Dua fails to present evidence of an agency relationship between Dordulian and Mitilian*

To the extent that Dua's claims against Mitilian for civil extortion and intentional infliction of emotional distress are premised on Dordulian's December 2018 e-mail to Kennedy, those claims fail because there is no basis for attributing Dordulian's statements in the e-mail to Mitilian.  Dua failed to present any evidence that Dordulian's and Mitilian's relationship was anything other than as cocounsel.  As the party asserting an agency relationship between Dordulian and Mitilian, Dua had

23

the burden of producing evidence to prove the existence of such a relationship.  (See *Inglewood Teachers Assn. v. Public Employment Relations Bd.* (1991) 227 Cal.App.3d 767, 780 [burden of proving agency is on party asserting the existence of the agency].)  He failed to do so.

**IV.  Attorney fees award**

Dua's sole basis for challenging the award of attorney fees and costs to Mitilian under section 425.16, subdivision (c) is that the trial court erred in granting the anti-SLAPP motion.  Because we affirm the judgment entered upon the trial court's order granting the anti-SLAPP motion, we also affirm the award of attorney fees and costs.

## DISPOSITION

The judgment is affirmed, as is the order awarding Mitilian attorney fees and costs.  Respondents shall recover their costs on appeal.

_____, J.
CHAVEZ

We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

24