Filed 6/26/23  ZL Technologies v. Srinivasan CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ZL TECHNOLOGIES, INC., ET AL., | H049444 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 21CV378097) |
| v. | |
| ARVIND SRINIVASAN, | |
| Defendant and Appellant. | |

Defendant Arvind Srinivasan appeals from an order denying his special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute.  (Code Civ. Proc., § 425.16.)[1]  The trial court denied this motion on the ground that the defamation cause of action asserted by plaintiffs ZL Technologies, Kon Leong, and Chimmy Shioya (collectively, Plaintiffs) does not arise from activity protected by the anti-SLAPP statute.  We conclude that this cause of action contains multiple claims, some of which arise from activity protected by the anti-SLAPP statute.  Accordingly, we affirm in part and reverse in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In reviewing an order granting or denying a motion to strike under the anti-SLAPP statute, we consider "the pleadings, and supporting and opposing affidavits . . . upon

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

which the liability or defense is based" (§ 425.16, subd. (b)(2)), accepting as true the evidence presented by the opposing party (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) The following facts are drawn from Plaintiffs' complaint and the declarations submitted in connection with Srinivasan's anti-SLAPP motion.

A. *The Parties and the Relationship Between Them*

Plaintiff ZL Technologies, Inc. (ZL) is a California corporation co-founded by plaintiff Kon Leong and defendant Arvind Srinivasan. Srinivasan served as ZL's chief technology officer until his termination in April 2020, and he remains a member of ZL's board of directors. Leong is ZL's chief executive officer and chairman of its board of directors. Plaintiff Chimmy Shioya, who is married to Leong, is ZL's senior director for business development and its director of operations and finance. Since 2018, Koichi Sekiyama, who is not a party to this action, has been the third member of ZL's board of directors.

By 2020, the business relationship between Srinivasan and Leong had soured. In April 2020, ZL's board of directors removed Srinivasan as an officer and terminated his employment, and in June 2020, ZL sued Srinivasan for misappropriation of technology.

Following his removal and termination, Srinivasan purportedly "went on an all-out war" against Plaintiffs. In May and September 2020, Srinivasan demanded production of documents and information from ZL, including copies of the company's corporate bylaws, minutes and recordings of board meetings, and financial records. Dissatisfied with ZL's response to his demands, Srinivasan called for a special shareholder meeting of ZL's shareholders on October 6, 2020. The following day, Srinivasan, through counsel, sent a 13-page letter to ZL's counsel, which is at the core of this case.

B. *The October 7, 2020 Letter*

In the October 7, 2020 letter, Srinivasan reiterated his earlier demands for documents and for a special shareholder meeting as well as requested a list of ZL's

2

current shareholders. Even more important, the letter accused Leong and Shioya of misconduct and demanded that the board take corrective action, including removal of Leong from the board of directors.

The letter contained a litany of accusations in bullet points stretching nine, single-spaced pages. It accused Leong and Shioya of "poor leadership," wasteful spending, and "incompetence" causing "millions of dollars of losses," and it contended that Leong had hired Shioya and taken numerous other actions without board of approval. The letter further accused Leong of reserving to himself "near-despotic control over Company operations," which he exercised without clear disclosure to the board for his personal benefit; misappropriating corporate assets for his and Shioya's personal benefit; and using ZL assets as his "personal 'piggy bank'" to fund his and Shioya's lifestyle without regard for the interests of the corporation and its shareholders. Indeed, the letter contended that, to further his own interests, Leong had deterred potential buyers by deliberately overvaluing the company and declining to meet with prospective investors. Finally, the letter accused Leong of hiding corporate assets by "offshoring ZL's money and assets and funneling them into foreign affiliates he and his wife effectively control."

The letter concluded by demanding that ZL remove Leong from the board of directors and take other corrective action "to avoid the commencement of a shareholders' action," and it reserved Srinivasan's "rights and remedies to proceed either in the name of the corporation in a derivative action or in his own name" if ZL did not promptly take action.

C. *Other Communications*

1. Sekiyama

On or about October 29, 2020, Srinivasan sent an email to Sekiyama, ZL's third board member. In addition to asserting that Leong had "refused to take Venture Capital money" and made "several key decisions . . . without any board meeting or consent," the email attached the October 7, 2020 letter to ZL. The email concluded by demanding that

3

Sekiyama, "as a board member . . . formally look into the contents of the attached letter and investigate" Leong's and Shioya's activities, and it warned Sekiyama that, if he ignored these problems, he could be held "personally liable."

### 2. Mutaguchi

Around the same time that he forwarded the October 7, 2020 letter to Sekiyama, Srinivasan also contacted a major ZL investor, Nobu Mutaguchi, and sent him the letter as well.

### 3. Others

Finally, Srinivasan contacted several shareholders in an effort to obtain shareholder proxy votes. Srinivasan apparently did not share or discuss the October 7, 2020 letter with them.

### D. *Srinivasan's Lawsuit*

In November 2020, in his individual capacity as a shareholder, Srinivasan sued ZL and Leong under Corporations Code section 304. Much as in the October 7, 2020 letter, Srinivasan alleged that Leong had exercised nearly total control of ZL to the exclusion of other board members; paid himself a salary and other compensation in amounts undisclosed to, and without the consent of, ZL's board; misappropriated corporate funds to finance a lavish lifestyle; secretly transferred millions of dollars and other corporate assets into foreign affiliates under his ownership or control; and otherwise engaged in a "scheme to defraud the Company and its shareholders." In light of this misconduct, Srinivasan requested "Leong's removal as a member of ZL's board and removal as a ZL officer."

### E. *The Proceedings in this Case*

In March 2021, Plaintiffs sued Srinivasan, asserting a single cause of action for defamation. The complaint lists 11 statements, all but one of which paraphrases or repeats verbatim statements in the October 7, 2020 letter to ZL. (The other allegation is from Srinivasan's October 29, 2020 email to Sekiyama.) It alleges that these statements

4

are false and defamatory and that Srinivasan "disseminated and republished" them to "ZL shareholders, former and current ZL employees and other persons unconnected to the company."

In response, Srinivasan filed a special motion to strike under the anti-SLAPP statute. Srinivasan argued that Plaintiffs' defamation cause of action is based on statements that were made in contemplation of litigation and therefore arise out of activity protected under subdivision (e)(2) of the anti-SLAPP statute. Srinivasan further argued that Plaintiffs could not demonstrate a probability of prevailing because the allegedly defamatory statements are subject to the litigation privilege under Civil Code section 47.

After the trial court permitted limited discovery, Plaintiffs opposed the motion to strike. In so doing, they acknowledged that the October 7, 2020 letter contained "virtually all of the challenged defamatory statements" and presented evidence of the October 29, 2020 email to Sekiyama attaching the letter and the transmission of the letter to Mutaguchi.

On September 8, 2021, following a hearing, the trial court denied Srinivasan's special motion to strike. The court ruled that Srinivasan had not shown that Plaintiffs' defamation cause of action arises out of protected activity and therefore had failed to satisfy his burden at step one of the analysis under the anti-SLAPP statute. In particular the court ruled that Srinivasan had failed to show that the October 7, 2020 letter was "made in anticipation of litigation contemplated in good faith." In addition, the court noted that Srinivasan stated in his declaration that the purpose of the letter was to "spur ZL to take necessary steps to investigate and remove Mr. Leong and stop the dangers I believe he poses to [ZL] and its shareholders," which in the court's view "undercut any position that the Letter was created in anticipation of litigation."

Srinivasan timely appealed the trial court's order. (§ 425.16, subd. (j) [orders granting or denying anti-SLAPP motions are appealable].)

5

## II. DISCUSSION

We review the order denying Srinivasan's anti-SLAPP motion de novo.  (See, e.g., *Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.)  We conclude that Srinivasan asserted a mixed cause of action for defamation containing several claims, some of which are not based on protected acts, and that the anti-SLAPP motion should have been denied with respect to those claims.  We conclude, however, that other claims arise out of statements made in connection with anticipated litigation that are protected under the anti-SLAPP statute and that these claims should be stricken under the anti-SLAPP statute.

A.  *The Anti-SLAPP Statute*

The Legislature enacted the anti-SLAPP statute to prevent and deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  (§ 425.16, subd. (a).)  To that end, the statute "provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384, italics omitted (*Baral*).)  In particular, the anti-SLAPP statute authorizes special motions to strike a claim that "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," and such a claim must be stricken unless "there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

Anti-SLAPP motions are analyzed in two steps.  First, "the moving [party] bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged.  [Citations.]"  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  Second, if the moving party shows that claims arise from protected activity, the burden shifts to the opposing party, which "must then demonstrate its claims have at least 'minimal merit.' "  (*Ibid.*)  "Only a [claim] that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP,

6

subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

If a plaintiff pleads a "mixed" cause of action containing discrete claims based on allegations of both protected and unprotected activity, "[a]nalysis of an anti-SLAPP motion is not confined to evaluating whether [the] entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).) Instead, each activity out of which a discrete claim arises is analyzed to determine whether it is protected and whether any claim arising out of that activity has minimal merit. (*Baral*, *supra*, 1 Cal.5th at pp. 393, 395; see *Bonni*, *supra*, 11 Cal.5th at p. 1010.)

While Plaintiffs do not dispute that they have alleged a mixed cause of action for defamation, they contend that the multiple claims within that cause of action should not be analyzed individually because Srinivasan did not do so, thereby waiving the Supreme Court's ruling in *Baral* concerning the treatment of mixed causes of action. The Supreme Court considered a similar argument in *Bonni*, *supra*, 11 Cal.5th 995. In *Bonni*, the plaintiff argued that its retaliation cause of action should be considered as a whole, without regard to claims within the cause of action, because the defendants had waived application of *Baral* by moving to strike the cause of action in its entirety. (*Bonni*, *supra*, 11 Cal.5th at p. 1009-1010, 1011.) The Supreme Court disagreed, ruling that "[o]ur holding in *Baral* applies even though the [defendants] sought to strike the entire cause of action, rather than merely parts of it." (*Id*. at p. 1011.)

The Supreme Court reasoned that waiving *Baral* would require courts to identify the " 'gravamen' " of a cause of action as a whole, which would "risk saddling courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims." (*Ibid*.) The Court also observed that analyzing multi-faceted causes of action as a whole "would predictably yield overinclusive and underinclusive results," which, on the one hand, would "constrain[] a

7

plaintiff's ability to seek relief without advancing the anti-SLAPP's goals of shielding protective activity" and, on the other hand, would "defeat[] the legislative goal of protecting defendants' from meritless claims." (*Ibid*.) Plaintiffs' waiver argument raises both these problems.

*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63 (*Young*) does not help Plaintiffs. In that case, the defendant filed an anti-SLAPP motion seeking to strike the entire complaint, which the plaintiff defeated by presenting evidence substantiating her primary claim, which concerned false representation that substituted service had been effected. (*Id*. at pp. 72, 77-95.) On appeal, defendants sought for the first time to strike a paragraph asserting a series of "derivative claims." (*Id*. at pp. 72, 95, 97-98.) Rather than finding application of *Baral* waived and analyzing the plaintiff's cause of action as a whole, as Plaintiffs suggest, *Young* analyzed the derivative claims separately from the plaintiff's primary claim. (*Id.* at pp. 95-100.) Moreover, *Young* concluded that the defendants "either failed to bear their initial burden . . . under *Baral* or forfeited their argument by not raising it with sufficient specificity." (*Id*. At p. 73.) Thus, far from supporting Plaintiffs' waiver argument, *Young* confirms that courts should apply *Baral* and analyze claims individually even when a defendant fails to do so.

Accordingly, we will analyze the individual claims asserted by Plaintiffs in their defamation cause of action.

B. *Step One of the Anti-SLAPP Analysis*

The complaint does not identify when and where the allegedly defamatory statements it challenges were made. However, in response to Srinivasan's anti-SLAPP motion, plaintiffs pointed to (1) the October 7, 2020 letter from Srinivasan's counsel to ZL's counsel; (2) the October 29, 2020 email to the ZL board member Koichi Sekiyama with that letter attached; (3) the transmission of the letter that same day to ZL investor Nobu Mutaguchi; and (4) various other communications with other ZL investors,

8

shareholders, and employees. In their briefing on appeal, Plaintiffs pointed to the same communications.

At oral argument, however, Plaintiffs denied asserting a claim based directly on the October 7, 2020 letter to ZL's counsel, relying on a disclaimer that the complaint challenged only statements "unconnected to . . . any pending or anticipated litigation." Especially as Plaintiffs deny that any of the challenged statements are connected to litigation, this disclaimer at most creates some ambiguity. Plaintiffs might have dispelled that ambiguity by disavowing any claim based directly on the October 7, 2020 letter in response to the anti-SLAPP Motion. Plaintiffs, however, did just the opposite: in their briefing in the trial court (and, again, on appeal), they gave the letter as the first example of the communications being challenged. Having done that, Plaintiffs cannot avoid application of the anti-SLAPP statute by denying that they asserted a claim based on the letter for the first time at oral argument. (*Cf. Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1054-1056.)

We now turn to the October 7, 2020 letter and the other communications on which Plaintiffs have asserted claims.

1. The October 7, 2020 Letter

As noted above, Plaintiffs' defamation claim is based almost entirely on statements in the October 7, 2020 letter from Srinivasan's counsel to ZL's counsel. Because the letter also demands that ZL take action, and threatens litigation absent such action, it qualifies as a statement in connection with litigation and is protected under subdivision (e)(2) of the anti-SLAPP statute.[2]

---

[2] Although on appeal Srinivasan relies primarily on subdivision (e)(4), the anti-SLAPP statute's "catch-all" provision, in the trial court he relied solely on subdivision (e)(2). As a party bringing an anti-SLAPP motion "may not change his theory of the case for the first time on appeal" in this manner (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 321, fn. 10 (*Flatley*)), we restrict our analysis to subdivision (e)(2). Although Srinivasan did not separately cite subdivision (e)(2) in his opening brief, he argued at length that there was a "connection between Srinivasan's alleged defamatory statements and the

9

The anti-SLAPP statute protects any act of a person "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) A plaintiff may establish that an activity is protected by showing that it falls within one of four categories identified in subdivision (e) of the anti-SLAPP statute, and the second of these categories is "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).) "Courts have taken a fairly expansive view of what constitutes litigation-related activity for purposes of section 425.16." (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 803-804.) To qualify as litigation-related, a statement need not be made while a suit is pending. To the contrary, "[s]tatements made 'in anticipation of a court action' may be entitled to protection under the anti-SLAPP statute." (*Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1005 (*Trinity*), quoting *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887 (*Digerati*).) In particular, a prelitigation statement may be protected under subdivision (e)(2) if it concerns "litigation that is contemplated in good faith and under serious consideration." (*Trinity*, at p. 1005, quoting *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.)

Applying this principle, courts repeatedly have recognized that, "[o]rdinarily, a demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under section 425.16." (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293 (*Malin*); see also *Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1027-1028 [holding demand letter protected conduct]; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1476, 1481 [threat to bring unlawful detainer suit]; *Blanchard v. DIRECTV* (2004) 123 Cal.App.4th 903, 918 (*Blanchard*) ["demand letter,

_____

litigation." Neither Srinivasan's use of subheadings nor his treatment of the record warrants dismissal.

10

sent in advance of, or to avoid, litigation to vindicate [defendant's] rights"]; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36-37 (*Rohde*) [voicemail messages threatening litigation].)

As Plaintiffs acknowledged at oral argument, Srinivasan's October 7, 2020 letter is a demand letter. The letter demanded, among other things, that ZL's chairman, plaintiff Leong, be removed from the board of directors due to a litany of misconduct. The letter made this demand expressly "to avoid the commencement of a shareholder's action," and it reserved Srinivasan's right to proceed "in his own name against all those responsible for the improper and unlawful conduct" described. Moreover, it is reasonable to infer that this demand was made in anticipation of litigation under serious consideration at the time because Srinivasan actually sued ZL for removal of Leong based on much the same alleged misconduct on November 3, 2020, less than a month later.

It makes no difference that Srinivasan stated in a declaration that the October 7, 2020 letter was intended "to spur ZL to take necessary steps to investigate and remove Mr. Leong." That aim is not incompatible with contemplation of litigation. To the contrary, Srinivasan could have hoped that the letter would prompt ZL to remove Leong and take other desired corrective action while recognizing that ZL might not give in and it would be necessary to sue. Indeed, demand letters typically seek to resolve disputes informally while recognizing that litigation may be necessary. Far from suggesting that he acted differently, Srinivasan's declaration noted that he sued "[w]hen ZL took no steps to curtail the harm caused by Mr. Leong."

At oral argument, Plaintiffs asserted that not all the statements made in the October 7, 2020 letter appear in the Corporations Code section 304 complaint that Srinivasan filed the following month. While that is true, the anti-SLAPP statute's protection for statements in connection with litigation does not require a one-to-one correspondence. To the contrary, " 'courts have adopted "a fairly expansive view of what

11

constitutes litigation-related activities,' ' " which requires only that "a statement 'concern[s] the subject of the dispute.' " (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) That requirement is easily satisfied here because the statements in the October 27, 2020 letter challenged by Plaintiffs concern Leong's alleged dishonesty, abuse of authority, and mismanagement of ZL, which is the subject addressed by the complaint. In addition, while Chimmy Shioya is not named as a party in the complaint, she is certainly a subject of the complaint, which requests that any removal order concerning Leong "be applicable to his wife Shioya as an alter ego of Leong."

We therefore conclude that all the statements in the October 7, 2020 letter challenged by ZL are statements in connection with litigation protected under subdivision (e)(2) of the anti-SLAPP statute.

    2.  <u>The Sekiyama email</u>

On October 29, 2020, one week before suing ZL, Srinivasan sent an email to Koichi Sekiyama, ZL's third board member. After describing some of Leong's misconduct, the email demanded that, "as a board member," Sekiyama "formally look into the contents of the attached letter and investigate" the activities of Leong and Shioya, and it attached the October 7, 2020 letter, which, as noted above, threatened to sue ZL if no corrective actions were taken

Srinivasan's email to Sekiyama is as much a pre-litigation demand as the October 7, 2020 letter that Srinivasan's counsel sent to ZL's counsel. Because ZL has a three-person board of directors and the other two members of ZL's board are Leong and Srinivasan, Sekiyama held the deciding vote on the relief—among other things, removal of Leong—sought in the October 7, 2020 letter. Thus, for Srinivasan to obtain relief as a result of the October 7, 2020 letter, ZL's counsel would have had to convey the letter or its substance to Sekiyama. By emailing Sekiyama and attaching the letter, Srinivasas

simply cut out the middleman. As a consequence, the email should receive the same protection under the anti-SLAPP statute as the October 7, 2020 letter.

### 3. The Communication with Mutaguchi

On October 29, 2020, the same day as he emailed Sekiyama, Srinivasan also sent the October 7, 2020 letter to Nobu Mutaguchi, a major ZL investor. Unlike Leong and Sekiyama, Mutaguchi was not a ZL board member, and Srinivasan presented no evidence that Mutaguchi could have influenced either Sekiyama or ZL to provide Srinivasan with the relief requested. To the contrary, Srinivasan appears to have been pursuing a parallel remedy: namely, a shareholder vote ousting Leong. However, as Plaintiffs correctly point out, communications are not in relation to litigation if they " 'only serve interests that happen to parallel or complement a party's interest in the litigation' " and do not advance the litigant's case. (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 382 [applying litigation privilege]; see also *Flatley*, *supra*, 39 Cal.4th at pp. 323-324 [noting that courts may look to the litigation privilege in determining the scope of subdivision (e)(2)); *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121.) Moreover, Srinivasan has not presented evidence of any other relation to litigation, such as Mutaguchi's involvement in Srinivasan's suit or encouraging Mutaguchi to sue himself. (Cf. *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 940-941 [counseling or encouraging others to sue]; *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055 [requesting involvement in suit].) As a consequence, Srinivasan's anti-SLAPP motion fails with respect to that communication.

### 4. Other Communications

The complaint also alleges additional, unspecified communications with other shareholders, former and current ZL employees and others unconnected to the company. Srinivasan, however, has not demonstrated that these statements have any connection

13

with the litigation that he was contemplating.  Consequently, his anti-SLAPP motion fails with respect to these communications as well.

C.  *Step Two of the Anti-SLAPP Analysis*

Because Srinivasan satisfied his burden on step one of the anti-SLAPP analysis only with respect to the claims based on the October 7, 2020 letter and the email to Sekiyama, we proceed to step two of the analysis only with respect to these claims.  We conclude that Plaintiffs have not satisfied their burden on this step because the litigation privilege bars claims based on the letter and the Sekiyama email.[3]

As noted above, at step two of the anti-SLAPP analysis the burden shifts to the plaintiff to establish "a probability that the plaintiff will prevail" (§ 425.16, subd. (b)(1)), which a plaintiff may do by "demonstrat[ing] its claims have at least 'minimal merit.' " (*Park*, *supra,* 2 Cal.5th at p. 1061, quoting *Navellier*, *supra*, 29 Cal.4th at p. 89.)  In particular, a plaintiff must show that it has "a legally sufficient claim" and make "a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral*, *supra*, 1 Cal.5th at pp. 384-385.)  This demonstration cannot be made if an affirmative defense bars the plaintiff's claim.  (See, e.g., *Trinity*, *supra*, 59 Cal.App.5th at p. 1006 ["To defeat an anti-SLAPP motion, cross-complainants must overcome any substantive defenses that exist."].)

Thus, it is well-established that "a plaintiff cannot establish a probability of prevailing where the litigation privilege precludes liability." (*Malin*, *supra*, 217 Cal.App.4th at p. 1302, quoting *Digerati*, *supra*, 194 Cal.App.4th at p. 888; see *Trinity*, *supra*, 59 Cal.App.5th at p. 1007; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 972;

_____

[3] We are not persuaded that Srinivasan's arguments concerning the litigation privilege under Civil Code section 47, subdivision (b) should be deemed forfeited due to procedural noncompliance, and because we conclude that privilege applies, we do not reach Plaintiffs' contention Srinivasan has forfeited any reliance on subdivision (c) of Civil Code section 47.

14

*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 926-927; *Rohde*, *supra*, 154 Cal.App.4th at p. 38.)

The litigation privilege bars Plaintiffs' defamation claims based on the October 7, 2020 letter and the Sekiyama email. The litigation privilege applies to any publication made "[i]n any . . . judicial proceeding" (Civ. Code, § 47, subd, (b)), and in keeping with its goal of providing "the utmost freedom of access to the courts," the privilege has been interpreted broadly to cover "communications with 'some relation' to an anticipated lawsuit." (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194, italics omitted.) As pre-suit demand letters have a close relation to anticipated litigation, courts repeatedly have held that the litigation privilege covers such demand letters. (See, e.g., *Malin*, *supra*, 217 Cal.App.4th at pp. 1301-1302; *Rohde*, *supra*, 154 Cal.App.4th at p. 38; *Blanchard*, *supra*, 123 Cal.App.4th at pp. 919-922; *Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 270 *Lerette v. Dean Witter Organization, Inc*. (1976) 60 Cal.App.3d 573, 577-578.) Both the October 7, 2020 letter and the Sekiyama email make a pre-litigation demand for the action—removal of Leong from the ZL board—sought in the Corporation Code section 304 suit filed in early November 2020. Consequently, the litigation privilege applies to both the October 7, 2020 letter and the Sekiyama e-mail and bars any claim arising out of statements made in them. (See, e.g., *Silberg v. Anderson* (1990) 50 Cal.3d 205, 215 ["To effectuate its vital purposes, the litigation privilege is held to be absolute in nature."]; see also *Argentieri v. Zuckerberg* (2017) 8 Cal.App.5th 768, 780 ["The privilege is absolute and precludes a claimant from establishing a probability of prevailing on the merits of his claim."].)

Because the litigation privilege bars any claims based on statements made in the October 7, 2020 letter and the October 29, 2020 Sekiyama email, Plaintiffs cannot establish a probability of prevailing on the claims based on those communications, and those claims should be stricken under the anti-SLAPP statute.

15

### III. DISPOSITION

The September 8, 2021 order denying appellant Srinivasan's motion to strike is affirmed in part and reversed in part.  On remand, the trial court shall vacate the order and issue a new order granting the motion to strike defamation claims arising out of the October 7, 2020 letter and the October 29, 2020 email (including republication of the letter in that email) but denying the motion with respect to claims arising out of other republications and communications.  The parties shall bear their own costs on appeal.

_____

BROMBERG, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

LIE, J.

*ZL Technologies, Inc. v. Srinivasan*
H049444

17